Commonwealth *v.* Wucherer, Appellant.

306

Argued Nov. 30, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*William A. Gray,* with him *Edward D. Barker* and *Charles H. Brunner, Jr.,* for appellant.

*David E. Groshens,* Assistant District Attorney, with him *Frederick B. Smillie,* District Attorney, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, March 19, 1945:

Defendant makes what the District Attorney properly characterizes as a "frontal attack" on the law of evidence relating to the proof of murder,—an attack which cannot be sustained by the weight of authority, by expediency, or by analytic reasoning.

Helen M. Wucherer and August Wucherer were married in 1930 or 1931. They lived together in apparent amity until the husband came under the spell of another woman; thereafter he was cruel to his wife both in words and action. Sometime around the middle of October, 1943, she purchased a revolver for the purpose, as she claims, of committing suicide. On the night of October 30, 1943, she implored her husband to resume his affection for her, but he repelled her, stating that he was in love with this other woman and wanted to marry her as soon as he could obtain a divorce. She thereupon went into an adjoining room, took the revolver, came back, and, at close range, fired five shots into his body, inflicting wounds in his head, neck and chest. He died within the hour.

All the testimony offered by defendant at the trial was in regard to the circumstances leading up to the killing, the manner in which it occurred, and in support of a defense of insanity. The jury rendered a verdict of guilty of murder in the second degree.

On this appeal defendant presents only one question for consideration: Did the court below err in charging the jury that where there is an unlawful and felonious homicide there is a presumption that such killing was malicious, and that as a general rule all homicide is presumed to be malicious? Defendant's able counsel admits that the rule thus stated is in accordance with the law of Pennsylvania,[1] but submits that it should be abolished because inconsistent with the presumption of innocence and with the burden cast upon the Commonwealth to prove guilt in respect to each and every element necessary to constitute murder.

The portion of the charge to which objection is made was an accurate pronouncement of our law as it has existed from the very beginning of the Commonwealth. As early as 1793 ADDISON, J., charged a jury that "Prima facie, every killing is murder, for malice is presumed, unless the prisoner show extenuating circumstances which take away the presumption of malice . . . the law implies malice, and the defendant must show provocation, to rebut the presumption of malice": *Pennsylvania v. Honeyman*, 1 Addison 147, 148. In *Pennsylvania v. McFall*, 1 Addison 255, 257, the same judge charged that "every unlawful killing is presumed murder unless

---

[1] It is true that the statement in *Commonwealth v. Drum*, 58 Pa. 9, 18, that "all homicide is presumed to be malicious" has been qualified as being true only where the homicide is felonious: *Commonwealth v. Elliott*, 292 Pa. 16, 21, 22, 140 A. 537, 539; *Commonwealth v. Kluska*, 333 Pa. 65, 71, 72, 3 A. 2d 398, 402; *Commonwealth v. Holt*, 350 Pa. 375, 385, 386, 39 A. 2d 372, 378. In the present case, however, the court omitted the qualifying adjective in but one of several instances in the course of the charge. Moreover there was no pretense that the shooting was justifiable, excusable or accidental; the killing was clearly felonious and the only defense offered was insanity.

the person accused can show such circumstances as will reduce it to a lower degree of homicide," and in *Pennsylvania v. Lewis,* 1 Addison 279, 282, that "By the law of England, all unlawful killing is presumed murder, until some extenuating circumstances are shown by the prisoner, lessening the degree of the offence to something lower than murder. Malice is presumed till want of malice is shown." From that time—150 years ago—until the present, in an almost continuous stream of reported cases, the same doctrine is repeated.[2] And already in 1858 this court said, in *Kilpatrick v. Commonwealth,* 31 Pa. 198, 216: "In all these [authorities] there is no essential variance of doctrine. A construction so uniform, so long-continued, and which has remained untouched by the legislature from 1795 to the present day, we are not at liberty to repudiate." In *Commonwealth v. Drum,* 58 Pa. 9, 18, was formulated the expression of the rule which, with but slight variation, has ever since been adopted by Pennsylvania judges in their charges to juries in murder cases, and thousands of trials have been, and constantly are being, conducted, in which it is employed as one of the accepted features of procedural law applicable to such cases.[3] Even were it deemed a

---

[2] Merely as examples may be cited: *Kilpatrick v. Commonwealth,* 31 Pa. 198, 200; *Cathcart v. Commonwealth,* 37 Pa. 108, 112; *Commonwealth v. Drum,* 58 Pa. 9, 18; *O'Mara v. Commonwealth,* 75 Pa. 424, 430; *Tiffany v. Commonwealth,* 121 Pa. 165, 179, 180; 15 A. 462, 464; *Commonwealth v. Reed,* 234 Pa. 573, 576, 83 A. 601, 603; *Commonwealth v. Bednorciki,* 264 Pa. 124, 128, 107 A. 666, 667; *Commonwealth v. Elliott,* 292 Pa. 16, 21, 22, 140 A. 537, 539; *Commonwealth v. Green,* 294 Pa. 573, 578, 579, 581, 144 A. 743, 745, 746; *Commonwealth v. Troup,* 302 Pa. 246, 252, 253, 153 A. 337, 340; *Commonwealth v. Robinson,* 305 Pa. 302, 306, 157 A. 689, 691; *Commonwealth v. Romanic,* 311 Pa. 415, 421, 166 A. 902, 904; *Commonwealth v. Carroll,* 326 Pa. 135, 137, 191 A. 610, 611; *Commonwealth v. Kluska,* 333 Pa. 65, 71, 3 A. 2d 398, 402; *Commonwealth v. Holt,* 350 Pa. 375, 385, 386, 39 A. 2d 372, 378.

[3] Referring to the *Drum* case, Chief Justice MITCHELL said in *Commonwealth v. Paese,* 220 Pa. 371, 379, 69 A. 891, 894: "That charge, as is well known, was prepared by Judge AGNEW with great care, and

doctrine which should no longer prevail, certainly, in the face of so venerable a history, the remedy should be sought, not in the courts, but in the legislature; the function of the former (at least where principles have become firmly imbedded in the warp and woof of judicial interpretation) being to declare what the law is, and that of the legislature to change existing law by statutory fiat.

The rule in question did not originate in Pennsylvania. It stems from a hoary English antiquity. All the commentators on criminal law from Coke (3 Inst. 52) through Hale (1 P. C. 455), Hawkins (1 P. C. ch. 13, sec. 32), Bacon (Abr.; Murder and Homicide (c) 2), Foster (Crown Law 255), Blackstone (4 Com. 201), and East (1 P. C. 340, sec. 106) to and including Halsbury (9 Laws of England 426), state the doctrine in assured and categorical terms. It is true that some of the States have seen fit, either by statute or otherwise, to modify it at least to some extent and that its historical authenticity was attacked in *Woolmington v. Director of Public Prosecutions* (1935), A. C. 462, but even in that case it was stated that malice may be implied where death occurs as the result of a voluntary act of the accused which is intentional and unprovoked, that the accused is entitled to show, by evidence or by examination of the circumstances adduced by the Crown, that the act on his part which caused death was either unintentional or provoked, and that, if the jury are either satisfied with his explanation or, upon a review of all the evidence, are left in reasonable doubt whether, even if his explanation be not accepted, the act was unintentional

---

before delivery was submitted to the careful review of Chief Justice Thompson and other justices of this court. Though its language in places partakes of the sentimental style of the older books, it was based largely on Russell on Crimes, the most authoritative modern book on criminal law, and its substantial accuracy has never been challenged. On the contrary, it was intended as a precedent and guide in similar cases and as such has been frequently approved by this court. . . . It is too late now to subject it to mere verbal criticism."

or provoked, the prisoner is entitled to be acquitted. In this there is nothing which, from a practical standpoint, materially conflicts with the doctrine as interpreted by our own decisions.

We pass from the persuasiveness of authority to that of reason. It is important at the outset to bear in mind that the so-called presumption of malice does not arise until the Commonwealth has made out a prima facie case of felonious homicide, which, according to Blackstone (4 Com. 188) is "the killing of a human creature . . . without justification or excuse." Such killing may have been committed by the accused with malice, willfulness, premeditation and deliberation, in which case it is murder in the first degree, or merely with malice and an intent to cause great bodily harm but not to kill, in which case it is murder in the second degree, or under provocation and a momentary frenzy of passion which placed the accused beyond the control of reason, in which case it is voluntary manslaughter. These distinctions, it will be noted, all depend upon the state of mind or emotions with which the killing was perpetrated, which are subjective factors incapable of proof except as revealed by admissions of the accused himself or inferred from his acts and the external circumstances leading up to and surrounding the crime. Unless, therefore, malice were impliable from physical events, it could scarcely ever be evidentially established. But the law properly goes a step further in that it recognizes, as the result of the universal and age-long experience of mankind, that in the great generality of instances a person who feloniously kills another does it because of hatred of his victim or because of wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, or mind regardless of social duty, all of which are comprehended in the term malice as used in law to denote the subjective factor essential to the crime of murder.[4] Moreover, the

[4] "Presumptions arise as follows: They are either (1) a procedural expedient, or (2) a rule of proof production based upon the

mental state of the accused at the time he committed the killing is usually known solely to himself, and therefore can best be explained by himself. Accordingly, this rule of evidence says that, where a felonious homicide is proved, malice is presumed to have existed, not conclusively, not as a so-called "presumption of law" or irrebuttable presumption, but as a presumption of fact,[5] which, as stated in *Commonwealth v. Kluska,* 333 Pa. 65, 69, 3 A. 2d 398, 401, "is but a prima facie inference which can be rebutted by testimony to the contrary" either by the accused himself denying such malice or by any other appropriate evidence.[6] Such a presumption does not mean that the jury *must* conclude, upon proof of a felonious homicide, that malice existed, but that, upon such proof being made, and in the absence of extenuating circumstances, a jury is *warranted* in determining that malice has been sufficiently shown to justify a conviction of murder; whether, under all the evidence in the case, malice did in fact exist, is for the jury's ultimate decision. Not at any stage of the trial is the Commonwealth absolved from the burden of establishing beyond a reasonable doubt the defendant's guilt in respect to each and every component element of the crime, including malice where the charge is murder; as the court in the present case instructed the jury, that burden never shifts, regardless of any presumption: *Tiffany v. Commonwealth,* 121 Pa. 165, 180, 15 A. 462, 464; *Commonwealth v. Flax,* 331 Pa. 145, 154, 155, 200 A. 632, 637.

comparative availability of material evidence to the respective parties, or (3) a conclusion firmly based upon the generally known results of wide human experience, or (4) a combination of (1) and (3).": *Watkins v. Prudential Insurance Co.,* 315 Pa. 497, 504, 173 A. 644, 648.

[5] *Tiffany v. Commonwealth,* 121 Pa. 165, 180, 15 A. 462, 464; cf. *Commonwealth v. Kluska,* 333 Pa. 65, 69, 3 A. 2d 398, 401.

[6] In Murray's New English Dictionary "presumption of fact" is defined as being merely "the inference of a fact not certainly known, from known facts".

The presumption of malice upon proof of a felonious homicide is not unique. There are many other so-called "presumptions" in procedural law which have their foundation in the domain of human experience,—as examples, the presumption of innocence and the presumption of sanity. There is also the well-known presumption, as stated in the *Drum* case, that "He who uses upon the body of another, at some vital part, with a manifest intention to use it upon him, a deadly weapon, . . . must, in the absence of qualifying facts, be presumed to know that his blow is likely to kill; and, knowing this, must be presumed to intend the death which is the probable and ordinary consequence of such an act." This also is a presumption only of fact and not of law: *Commonwealth v. Green,* 294 Pa. 573, 580-584, 144 A. 743, 746, 747; *Commonwealth v. Kluska,* 333 Pa. 65, 69, 3 A. 2d 398, 401.

Having in mind, therefore, that the presumption here under attack is nothing more than an administrative assumption for procedural purposes which is always open to explanation and rebuttal, and considering further that there is no reason why a person charged with crime should be exempt from the ordinary presumptions or inferences which attach to the acts of men in all other relations of life, we are not impressed by the argument that this rule of evidence is an infringement upon the presumption of innocence to which every defendant in a criminal proceeding is entitled. Apart from its long-established status in our judicial history, to repudiate it now would be merely to succumb to a metaphysical refinement of reasoning quite foreign to the spirit of practicality which governs the administration of our criminal law.

Judgment affirmed.