382 A.2d 724

**COMMONWEALTH of Pennsylvania**

v.

**Clara Marie HILBERT, Appellant.**

Supreme Court of Pennsylvania.

Argued March 8, 1977.
Decided Jan. 26, 1978.

Charles M. Schwartz, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Charles W. Johns, Asst. Dist. Attys., Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

O'BRIEN, Justice.

In 1972, appellant, Clara Marie Hilbert, was convicted of murder of the second degree in the Court of Common Pleas of Allegheny County. The evidence establishes that during the evening of December 20, 1971, Hilbert appeared at a police station in Pittsburgh and reported that a man was badly hurt nearby. Officers accompanied her to the scene and found one Lawrence Burr in a car. Burr was badly injured as a result of several stab wounds. He was taken to a hospital and pronounced dead on arrival. An autopsy confirmed that the stab wounds were the cause of death. Police investigation further revealed that there were jimmy marks on Burr's car when the police first came upon it. The marks tended to show a break-in attempt. A screwdriver was found nearby and determined to have caused the marks. A brick was thrown through the car's rear window. Burr's watch and wallet were missing when Burr was discovered by the police but were later found in the vicinity.

The officers on the scene arrested Hilbert. After being given the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), she admitted having stabbed Burr. Hilbert made the same admission at trial but claimed to have acted in self-defense. She testified that Burr picked her up in her professional capacity as a prostitute and then attacked her. She described a struggle during which Burr choked her and prevented her from leaving the scene. She stated that the attack caused her to

stab Burr with a knife she carried for protection. The trial court instructed the jury that Hilbert was required to prove by a preponderance of evidence that she was acting in self-defense.

Appellant argues that the court below erred in charging the jury that she was required to prove by a preponderance of the evidence that she was acting in self-defense when she stabbed Lawrence Burr. We agree.

## I—WAIVER

Initially, we must decide whether the above issue was preserved for appellate review. The Commonwealth contends that appellant's failure to orally argue the burden of proof issue at post-verdict motions precludes her from raising it on appeal. We do not agree.

The record in the instant case reveals that defense counsel specifically objected to the burden-of-proof charge at trial and continued this objection in his written post-verdict motions. While the record also shows that counsel did not orally argue the issue during the argument on the post-verdict motions, the trial court decided the merits of this issue adversely to appellant. The Commonwealth contends that this failure to orally argue bars appellant from raising this issue on appeal. We do not agree.

Pa.R.Crim.P. 1123, in effect at the time that appellant filed her post-verdict motions, provided:

"(a) A motion for a new trial shall be filed within seven days after verdict, or within such additional time allowed by the court during the seven-day period.

"(b) A motion for a new trial shall be in writing, and the grounds shall be specified. All allegations of fact not of record shall be supported by affidavit. Leave to state additional specific grounds after the transcript is lodged must be sought within the period allowed pursuant to section (a) of this Rule or within such further time as the

court may allow. Only the grounds so raised may be argued before the court.

"(c) A motion for a new trial on the ground of after-discovered evidence shall be filed promptly after such discovery, and not later than two years after final judgment, unless justice otherwise requires. If an appeal is pending, the court may grant the motion only upon remand of the case." Adopted Jan. 24, 1968. Eff. Aug. 1, 1968.[1]

Subsection (b) of the Rule provides that only those grounds included in the written motions may be argued to the court. There is nothing in Rule 1123, either the 1972 version or the 1977 version, which requires the oral argument in addition to written enumeration of a ground advanced in post-verdict motions in order to preserve an issue for appellate review. Moreover, in *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975), this court required that the post-verdict court only consider those allegations of error that were included in the written motions. See also *Commonwealth v. Roman*, 465 Pa. 515, 351 A.2d 214 (1976). The issue concerning the burden of proof was included in the written post-verdict motions and decided by the trial court on the merits. Therefore, this issue is properly preserved for appellate review.

## II—MERITS

Appellant argues that the court below erred in charging the jury that she was required to prove by a preponderance of the evidence that she was acting in self-defense when she stabbed Lawrence Burr. We agree.[2]

1. The above Rule of Criminal Procedure has since been amended. See Pa.R.Crim.P. 1123 [1977 Pamphlet] adopted June 8, 1973, effective in forty-five days.

2. The homicide from which the instant appeal arose occurred on December 20, 1971; therefore, the applicable criminal statute is the Act of June 24, 1939, P.L. 872, § 701, amended by the Act of December 1, 1959, P.L. 1621, § 1. Appendix to 18 Pa.C.S.A. § 101 at Former Title 18 P.S. 4701; rather than the Crimes Code, December 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973. 18 Pa.C.S.A. § 101, et seq.

In the instant case, the trial court instructed the jury as follows: [3]

" . . . *Under the law such a defense of self-defense need not be proved beyond a reasonable doubt, but the burden is on the defendant to prove such a defense by the fair weight or preponderance of the evidence* . . .

" . . . Even though you should come to the conclusion that under all the circumstances, considering everything that has been presented to you, *that the defendant has failed to prove self-defense by the criterion [sic] I have outlined for you,* you will nevertheless turn your attention to the question of whether or not she acted under an uncontrollable fear of great physical injury or death." (Emphasis added.)

The United States Supreme Court, in *In Re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970), stated:

"Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt *of every fact necessary to constitute the crime with which he is charged.* (Emphasis added.)

In *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the Supreme Court, following the dictates of *Winship, supra,* reversed a criminal defendant's conviction of a homicide committed in Maine because the trial court instructed the jury that the defendant carries the burden of proof by a preponderance of the evidence that he acted in the heat of passion or sudden provocation to reduce the crime charge from murder to manslaughter.[4]

**3.** At the time of appellant's trial the instant charge was in conformity with *Commonwealth v. Winebrenner,* 439 Pa. 73, 265 A.2d 108 (1970).

**4.** The relevant Maine murder statute provided:
"Whoever unlawfully kills a human being with malice aforethought, either express or implied, is guilty of murder and shall be punished by imprisonment for life." Me.Rev.Stat.Ann., Tit. 17, § 2651 (1964).

In interpreting the Maine homicide statutes, the Supreme Court determined that the concept of "heat of passion or sudden provocation" negated "malice aforethought," an element of the definition of murder and, therefore, the Due Process Clause of the United States Constitution prohibits placing a burden of proof upon a criminal defendant to negate an element of the crime with which he or she is charged. *Mullaney, supra,* continued the *Winship* mandate that the prosecution must prove *all* the elements of the crime charged as defined by the crimes statutes of a state or at common law.

In *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), the United States Supreme Court reversed a conviction for murder where the trial court instructed the jury that the defendant carries the burden of proof "to your satisfaction" that he acted in self-defense. The defendant in *Hankerson* was tried prior to the Supreme Court's decision in *Mullaney, supra.* The court, however, determined the burden of proof standard articulated in *Winship, supra,* and *Mullaney, supra,* was applicable to all persons on direct appeal regardless of the date of trial.

The *Hankerson* court determined that the North Carolina Supreme Court erred in failing to apply *Mullaney* to persons tried before the date of that decision. The court held that *Mullaney* did not announce new law but rather was an application of *Winship.* Having determined that *Winship* was, in fact, the controlling precedent, the court further held:

> "The Supreme Court of North Carolina erred in declining to hold retroactive the rule in *Mullaney v. Wilbur,* supra. In *Ivan V. v. City of New York,* 407 U.S. 203, 204–205, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972), this Court addressed the question whether our decision in *In re*

The Maine manslaughter statute provided:
> "Whoever unlawfully kills a human being in the heat of passion, on sudden provocation, without express or implied malice aforethought . . . shall be punished by a fine of not more than $1,000 or by imprisonment for not more than 20 years . . . ."
Me.Rev.Stat.Ann., Tit. 17, § 2551 (1964).

*Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)—holding the reasonable doubt standard applicable to state juvenile proceedings—was to be applied retroactively. The Court there said:

> ' "Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good-faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances." *Williams v. United States,* 401 U.S. 646, 653, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971). See *Adams v. Illinois,* 405 U.S. 278, 280, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972); *Roberts v. Russell,* 392 U.S. 293, 295, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968).
>
> '*Winship* expressly held that the reasonable-doubt standard "is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence—that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law' . . . . 'Due process commands that no man shall lose his liberty unless the Government has borne the burden of . . convincing the fact-finder of his guilt.' To this end, the reasonable-doubt standard is indispensable, for it 'impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.' " 397 U.S., at 363–364, 90 S.Ct., at 1068.
>
> 'Plainly, then, the major purpose of the constitutional standard of proof beyond a reasonable doubt announced in *Winship* was to overcome an aspect of a criminal trial that substantially impairs the truth-finding function, and *Winship* is thus to be given complete retroactive effect.'

> "*Ivan V.* controls this case. In *Mullaney v. Wilbur,* as in *In re Winship,* the Court held that due process requires the States in some circumstances to apply the reasonable-doubt standard of proof rather than some lesser standard under which an accused would more easily lose his liberty. In *Mullaney,* as in *Winship,* the rule was designed to diminish the probability that an innocent person would be convicted and thus to overcome an aspect of a criminal trial that 'substantially impairs the truth-finding function.' "

■ After *Mullaney* and *Hankerson,* the Supreme Court has made eminently clear that the government has the burden of proof beyond a reasonable doubt to prove all elements of the crime charged and that standard is to be given "complete retroactive effect." [5]

Subsequent to *Mullaney* and *Hankerson,* the Supreme Court decided *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281, 45 L.W. 4708 (June 17, 1977). In *Patterson,* the court determined that it was constitutionally permissible to place a burden of proof by the preponderance of the evidence on a criminal defendant if that defendant was attempting to raise an "affirmative defense" to criminal charges. The court determined that an affirmative defense was one that excused or justified the crime but did not negate an element of the criminal offense charged.

The relevant facts in *Patterson* were:

> "Patterson was charged with second-degree murder. In New York there are two elements of this crime: (1) 'Intent to cause the death of another person'; and (2) 'caus[ing] the death of such person or of a third person.' N.Y. Penal Law § 125.25 (McKinney). Malice aforethought is not an element of the crime. In addition, the State permits a person accused of murder to raise an affirmative defense that he 'acted under the influence of

---

**5.** This is not a case where this court must face the issue of whether a prior decision should be applied to persons tried prior to that decision, but whose direct appeal to this court is not final. *Hankerson* has decided the issue for us.

extreme emotional disturbance for which there was a reasonable explanation or excuse.'

"New York also recognizes the crime of manslaughter. A person is guilty of manslaughter if he intentionally kills another person 'under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance.' Appellant confessed before trial to killing Northrup, but at trial he raised the defense of extreme emotional disturbance." (Footnotes omitted.)

The Supreme Court determined that affirmative defense of "extreme emotional disturbance" did not negate either of the two statutory elements of murder of the second degree and, therefore, the dictates of *Winship, Mullaney* and *Hankerson* did not apply. The court in *Patterson* stated:

"We thus decline to adopt as a constitutional imperative, operative country-wide, that a State must disprove beyond reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused. Traditionally, due process has required that only the most basic procedural safeguards be observed; more subtle balancing of society's interests against those of the accused have been left to the legislative branch. We therefore will not disturb the balance struck in previous cases holding that the Due Process Clause requires the prosecution to prove beyond reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged. Proof of the nonexistence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule in this case and apply it to the statutory defense at issue here."

Since *Patterson,* the law is clear that a state carries a never-shifting burden of proof beyond reasonable doubt of all the elements of crime, such elements being contained in either statutory or common-law definitions. See *Winship, Mullaney* and *Hankerson.* As we read *Patterson,* however, a State which chooses to do so may constitutionally impose a "burden of proof" on a criminal defendant in relation to an

"affirmative defense" which relieves the accused of criminal responsibility, but does not negate an element of the crime as it is defined in that jurisdiction. See *Patterson, supra.*

We must now apply the above burden-of-proof cases to the definition of the crime of murder which existed in Pennsylvania prior to enactment of our 1972 Crimes Code.[6]

In *Commonwealth v. Drum,* 58 Pa. 9 (1868), we defined murder as:

"At the common law murder is described to be, when a person of sound memory and discretion unlawfully kills any reasonable creature in being and under the peace of the Commonwealth, with malice aforethought, expressed or implied. The distinguishing criterion of murder is malice aforethought. But it is not malice in its ordinary understanding alone, a particular ill-will, a spite or a grudge. Malice is a legal term, implying much more. It comprehends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Murder, therefore, at common law embraces cases where no intent to kill existed, but where the state or frame of mind termed malice, in its legal sense, prevailed.

"In Pennsylvania, the legislature, considering that there is a manifest difference in the degree of guilt, where a deliberate intention to kill exists, and where none appears, distinguished murder into two grades—murder of the first and murder of the second degree; and provided that the jury before whom any person indicted for murder should be tried, shall, if they find him guilty thereof, ascertain in their verdict whether it be murder of the first or murder of the second degree. By the Act of 31st March 1860, 'all murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate

6. As noted previously, the criminal incident upon which this prosecution is based occurred prior to the effective date of the Crimes Code and, therefore, the 1939 Penal Code is applicable.

and premeditated killing, or which shall be committed in the perpetration of, or attempt to perpetrate any arson, rape, robbery or burglary, shall be deemed murder of the first degree; and all other kinds of murder shall be deemed murder of the second degree.'

"In this case we have to deal only with that kind of murder in the first degree described as 'wilful, deliberate, and premeditated.' Many cases have been decided under this clause, in all of which it has been held that the *intention* to kill is the essence of the offence. Therefore, if an intention to kill exists, it is wilful; if this intention be accompanied by such circumstances as evidence a mind fully conscious of its own purpose and design, it is deliberate; and if sufficient time be afforded to enable the mind fully to frame the design to kill, and to select the instrument, or to frame the plan to carry this design into execution, it is premeditated. The law fixes upon no length of time as necessary to form the intention to kill, but leaves the existence of a fully formed intent as a fact to be determined by the jury, from all the facts and circumstances in the evidence."

The common-law elements of murder were:

1. When a person of sound memory and discretion
2. unlawfully kills
3. any reasonable creature
4. with malice expressed or implied.

In 1860, the Legislature modified common law to provide two degrees of murder. Murder in the first degree, in addition to the above enumerated elements, was redefined so as to require an intentional killing. Murder of the second degree was then *all* other murders.

Having established the elements of murder in the first degree and second degree, we must now determine whether "self-defense" negates any of the definitional elements.

In *Commonwealth v. Mahoney,* 460 Pa. 201, 331 A.2d 488 (1975), we defined the necessary elements of self-defense as:

"It is fundamental that the killing of another human being without justification or excuse is felonious homicide. *Commonwealth v. Wucherer,* 351 Pa. 305, 41 A.2d 574 (1945), and 4 Blackstone Commentaries, 188 (1898). However, a killing is not felonious homicide and is excusable if it is committed in self-defense. *Commonwealth v. Johnston,* 438 Pa. 485, 263 A.2d 376 (1970); *Commonwealth v. Vassar,* 370 Pa. 551, 88 A.2d 725 (1952). The following conditions must be satisfied before one can successfully invoke the defense of self-defense: (1) the slayer must have been free from fault in provoking or continuing the difficulty which resulted in the killing; (2) he must have reasonably believed that he was in imminent danger of death, great bodily harm, or some felony, and that there was a necessity to kill in order to save himself therefrom; (3) the slayer must not have violated any duty to retreat or avoid the danger. *Commonwealth v. Johnston, supra,* 438 Pa. 485, at 489, 263 A.2d 376, at 379. See also *Commonwealth v. Carbonetto,* 455 Pa. 93, 314 A.2d 304 (1974); *Commonwealth v. Tiernan,* 455 Pa. 88, 314 A.2d 310 (1974)."

We are of the opinion that "self-defense" negates two elements of the common-law definition of murder: unlawfulness and malice. In *Commonwealth v. Mahoney, supra,* we stated that a killing committed in self-defense is an excusable homicide and, therefore, is not "unlawful". See also *Mullaney, supra,* 421 U.S. at p. 684, 95 S.Ct. 188.

Moreover, we are of the opinion that self-defense also negates the element of malice in the common-law definition of murder.

In *Drum, supra,* we defined malice as:

". . . Malice is a legal term, implying much more. It comprehends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Murder, therefore, at common law embraces cases where no intent to kill exist-

ed, but where the state or frame of mind termed malice, in its legal sense, prevailed."

■ A claim of self-defense, if believed, would negate any element of "ill-will, wickedness of disposition, hardness of heart, cruelty or recklessness of consequences, and a mind regardless of social duty" necessary to constitute malice.

■ We are, therefore, of the opinion that self-defense negates specific elements of the crime of murder as it existed in this State at common law, i. e., unlawfulness and malice, and it is in contravention of the United States Constitution, as interpreted by *Winship, Mullaney* and *Hankerson,* to require a criminal defendant to carry a burden of proof by a preponderance of the evidence concerning this defense.

Appellant raises other allegations of error we need not discuss because of our resolution of the above issue.

Judgment of sentence reversed and the case is remanded for a new trial.

EAGEN, C. J., files a concurring opinion.

ROBERTS, NIX and MANDERINO, JJ., concur in the result.

EAGEN, Chief Justice, concurring.

I agree self-defense is inconsistent with an element of murder, namely an unlawful killing, as defined under the applicable law of Pennsylvania. Accordingly, I believe *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) as explained in *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), is applicable instantly. Since *Hankerson v. North Carolina,* 423 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977) held *Mullaney v. Wilbur, supra,* was to be given complete retroactive effect, the judgment of sentence must be reversed and a new trial granted. But, in concurring in the reversal of the judgment of sentence, I express no view on whether *Patterson v. New York, supra,* can be *logically* reconciled with *Leland v. Oregon,* 343 U.S.

302

790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). *Compare Common- wealth v. Ernst*, 476 Pa. 102, 381 A.2d 1245 (1977) (opinion in support of affirmance).