J-S01023-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                :            PENNSYLVANIA
                                                :

          v.                                  :

RICHARD LEONARD WILLIAMS     :

            Appellant        :     No. 637 WDA 2022

Appeal from the Judgment of Sentence Entered May 3, 2022,
in the Court of Common Pleas of Fayette County,
Criminal Division at No(s): CP-26-CR-0001064-2021.

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:          **FILED: MAY 12, 2023**

Richard Leonard Williams appeals from the judgment of sentence entered after a jury convicted him of aggravated assault, simple assault, five counts of recklessly endangering another person, four counts of terroristic threats, and three counts of unlawful restraint.[1] We are constrained to vacate in part and remand for a new trial.

The trial court recounted the facts adduced at trial:

> On February 15, 2021, Officer Thomas O'Barto of the Masontown Police Department was dispatched to Fort Mason Village for a reported fight and potential stabbing at approximately 10:30 pm. When Officer O'Barto arrived on scene, he observed a male bleeding in front of apartment 33, who he identified as Mark Smith. Mr. Smith was bleeding from the right arm and had several other injuries. Officer O'Barto then moved to the inside of the

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 2701(a)(1), 2705, 2706(a)(1), and 2902(c)(1).

apartment to clear the residence and to check for other victims. Officer O'Barto found Crystal Jackson and her [three c]hildren in the upstairs room, everyone was crying and visibly distraught. The officer then moved the family to outside the apartment so he could continue to clear the scene.

The officer cleared the scene with no sight of Williams. The victim, Crystal Jackson, told the officer that the perpetrator was Williams. While the officer was speaking to [Jackson], she showed him messages she received from Williams. Then Williams called [Jackson's] phone. Officer O'Barto answered the phone, identified himself and told Williams to turn himself in. Williams was adamant that he would not turn himself in.

From the scene Officer O'Barto collected two knives, one in the living room at the bottom of the staircase, and the other in the bedroom where the family was located when he arrived on scene. The knives were properly collected for evidence. Later that night[, Williams] sent [Jackson] messages saying, "I'm getting a gun and I'm coming after [all] y'all." Williams was eventually located and arrested for his preliminary hearing.

Trial Court Opinion, 7/11/22, at 4–5.

Jackson testified that Williams came to her apartment and, with their three children in Jackson's bedroom, cut his arm and told Jackson she could stop the cutting by not talking to Smith. Smith testified that he came to tell Williams to leave; as Williams ran down the stairs, Smith grabbed Williams' legs and took him to the floor. Williams then cut Smith with a knife and fled. The jury also heard that the previous night, Smith and Williams fought outside Jackson's apartment.

Williams represented himself at trial and testified in his own defense. He argued that he acted in self-defense against Smith. As described below, Williams sought to introduce his knowledge of Smith's criminal charges from 2018. Based on Williams' limited documentary evidence of Smith's record,

- 2 -

the trial court took the matter under advisement. Following its review of Smith's case, the court told the jury that Smith had a conviction for criminal trespass, which the jury could use only in assessing Smith's credibility.

The trial court instructed the jury on self-defense. It gave instructions on the elements of the charged crimes that substantially tracked the standard jury instructions. Williams did not object to the trial court's final instructions.

The jury found Williams not guilty of attempted murder and guilty of the remaining offenses. On May 3, 2022, the court sentenced Williams to an aggregate term of 9 to 30 years of imprisonment, consecutive to his sentence in a related case. Williams timely appealed. Williams and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.[2]

Williams presents seven questions for our review:

1. Whether the Commonwealth's evidence in this case is insufficient by failing to prove [Williams] was not acting in self defense in regards to aggravated assault (Count 2) beyond a reasonable doubt?

2. Whether self defense was justified and the verdict was against the weight of the evidence?

3. Whether the Commonwealth furnished evidence to justify the assault upon [Williams]?

---

[2] Williams, *pro se* in this case and a related case, received extra time to file his concise statements of error. After Williams filed his concise statement in his other case, the trial court entered its opinion in both cases. Williams then filed his concise statement in this case, before the extended due date. We remanded for a supplemental trial court opinion to address the other issues that Williams briefed in this case. The trial court promptly entered a supplemental opinion on March 27, 2023.

4. Whether the trial court erred by not permitting inquiry into victims crimen falsi conviction?

5. Whether the evidence is insufficient to sustain the conviction for terroristic threats regarding [Williams'] children, Counts 9, 10, 12?

6. Whether the evidence is insufficient to sustain the convictions of unlawful restraint, Counts 13, 14 and 15?

7. Whether the trial court erred in its instructions by withholding explanation between malice and self defense?

Williams' Brief at 7. The Commonwealth did not file a brief.

## 1. Sufficiency of the evidence – self-defense

Williams' first issue concerns the sufficiency of the Commonwealth's evidence to prove that he was not acting in self-defense for the charge of aggravated assault against Smith.[3] He emphasizes Smith's testimony that Williams had not yet reached Smith when Smith grabbed his feet. Because of this evidence that Smith initiated physical contact, Williams argues that the Commonwealth did not meet its burden to disprove self-defense.

As with any challenge to the sufficiency of the evidence, we employ the following well-settled standard of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the [jury] to find every element of the crime beyond a reasonable doubt. In applying this test, we may not weigh the

_____

[3] The trial court instructed the jury that self-defense applied to the charges of attempted murder, aggravated assault, and simple assault. As noted **infra**, self-defense should also apply to the charge of recklessly endangering Smith. The jury acquitted Williams of attempted murder. Williams limits his challenge on appeal to the charge of aggravated assault.

evidence and substitute our judgment for the [jury's].  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the [jury] unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime [and disproving self-defense] beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.  Finally, the [jury] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Boyer**, 282 A.3d 1161, 1171 (Pa. Super. 2022) (brackets omitted) (quoting **Commonwealth v. Walsh**, 36 A.3d 613, 618–19 (Pa. Super. 2012)).

Once there is some evidence to justify a finding of self-defense, the Commonwealth has the burden to prove beyond a reasonable doubt that the defendant was not acting in self-defense.  **Commonwealth v. Mouzon**, 53 A.3d 738, 740–43 (Pa. 2012) (cataloguing the history of this burden).  Pennsylvania's self-defense law is found in Section 505 of the Crimes Code, "Use of force in self-protection":

**(a) Use of force justifiable for protection of the person.--** The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

**(b) Limitations on justifying necessity for use of force.--**

\* \* \*

(2) **The use of deadly force is not justifiable** under this section unless the actor believes that such force is necessary to protect

himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable **if**:

> (i) **the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter**; or
>
> (ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

18 Pa.C.S.A. § 505(a), (b)(2) (emphasis added). Under this law, when a defendant uses deadly force, the three elements of a self-defense claim are:

> (1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (2) the defendant was free from fault in provoking the difficulty which culminated in his use of deadly force; and (3) the defendant did not violate any duty to retreat.

***Commonwealth v. Steele***, 234 A.3d 840, 846 (Pa. Super. 2020) (citing ***Mouzon***, 53 A.3d at 740). The Commonwealth may meet its burden by disproving any of these three elements. Here, the trial court properly instructed the jury on self-defense. N.T., Trial, 4/27/22, at 340–344.

As a threshold matter, the evidence was sufficient to prove that Williams committed aggravated assault. His use of a knife (of any length) was deadly force. ***Commonwealth v. Cutts***, 421 A.2d 1172, 1174 (Pa. Super. 1980) (citing ***Commonwealth v. Jones***, 332 A.2d 464, 466–67 (Pa. Super. 1974)). Also, Williams knew that a knife was readily capable of causing serious bodily injury or death, having cut himself and threatened to kill himself moments

earlier. The evidence was thus sufficient to prove that when Williams used a knife to slice Smith's arm, he was using deadly force.

Likewise, the evidence was sufficient to prove that Williams did not act in self-defense. Here, evidence was presented that Williams provoked Smith's use of force against him. As Jackson testified, Williams said that he was going to kill Smith. N.T., 4/26/22, at 65. Additionally, Smith testified that Williams, who had fought him the previous night, told him to leave and then started "charging down the stairs" towards him. *Id.* at 130. The jury was free to believe this testimony, which was sufficient to establish that Williams intended to kill or seriously injure Smith and that Williams did not act in self-defense because he provoked Smith to grab his feet and restrain him. Therefore, Williams' first issue fails.

### 2. Weight of the evidence – self-defense

In Williams' second issue, he argues that the weight of the evidence at trial favored his self-defense claim. He notes that Smith arrived with at least one other person and put him in a chokehold when he sliced Smith's arm.

Williams has waived this issue. A defendant must preserve a claim that the verdict was against the weight of the evidence by moving for a new trial, either: orally, on the record, before sentencing; in a written motion before sentencing; or in a post-sentence motion. Pa.R.Crim.P. 607(A). "Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion." *Commonwealth v. Rivera*, 238 A.3d

- 7 -

482, 497 (Pa. Super. 2020) (quoting **Commonwealth v. Thompson**, 93 A.3d 478, 490 (Pa. Super. 2014)).

Here, a review of the transcripts from the trial and sentencing, as well as the rest of the certified record, reveals that Williams never moved for a new trial based on the weight of the evidence. He filed no post-trial motions, instead appealing the same day as his sentence. Therefore, he has waived this issue.

### 3. Sufficiency of the evidence – aggravated assault

Williams' third issue is a challenge to the sufficiency of the evidence that he intended to cause death or serious bodily injury to Smith. This was an element of aggravated assault as well as an element that the Commonwealth had the burden to disprove for Williams' self-defense claim.

As above, Jackson testified that when Williams left the bedroom, he said that he was going to kill Smith. N.T., 4/26/22, at 65. And Smith testified that Williams charged down the stairs towards him. **Id.** at 130. The jury was free to believe this direct and circumstantial evidence that when Williams provoked Smith to grab and restrain him, his intent was to cause death or serious bodily injury. Williams' third issue fails.

### 4. Admissibility of evidence – Smith's conviction

Williams' fourth issue concerns the trial court's treatment of evidence of Smith's criminal record. Williams tried to cross-examine Smith about Smith previously entering another person's residence at night. N.T., 4/26/22, at

149. The Commonwealth objected, and Williams offered an exhibit showing that Smith was charged with certain offenses in 2018 (two and a half years before the incident being tried). The trial court reserved ruling on the admissibility of Smith's prior crimes based on Williams' documentation.[4] Williams continued questioning Smith without reference to the prior incident.

During a recess, the trial court reviewed Smith's criminal case and determined that Smith had pled guilty to criminal trespass, loitering and prowling at night, and harassment.[5] The court therefore ruled that it would instruct the jury that it could consider Smith's criminal trespass conviction in judging Smith's truthfulness. Williams explained that he was not seeking to use it for that purpose but rather to substantiate his own fear of serious bodily harm. N.T., 4/26/22, at 201–202.[6] In response to the trial court's concern that there was no evidence that Williams had known about Smith's conviction, Williams explained, "I knew it. I knew he had done it before because he was in jail. I've known him for ten years." *Id.* at 202.

Ultimately, the trial court ruled that Smith's conviction for criminal trespass would be admissible only as *crimen falsi* evidence. It thus did not

---

[4] It is not clear exactly what documents Williams had. The trial court states he had an affidavit of probable cause and a transcript from a magistrate hearing. Trial Court Opinion, 3/27/23, at 7. Williams included a criminal information with his brief. From the substance of the discussion, it appears he may have had a docket sheet, which is informally known as a transcript.

[5] 18 Pa.C.S.A. §§ 3503(a)(1)(i), 5506, and 2709(a)(3).

[6] It appears that Williams cited **Commonwealth v. Stewart**, 394 A.2d 968 (Pa. 1978), which was spelled as **Hoover** in the notes of testimony.

allow Williams to testify to Smith's prior violence, except for violence toward Williams. The court instructed:

> Ladies and gentlemen, while they're talking, you heard some discussion yesterday about a prior criminal record for Mark Smith, and also while we were discussing this matter outside of your presence the parties stipulated that Mark Smith has a criminal conviction for criminal trespass. The only purpose for which you may consider this evidence of his prior conviction is deciding whether or not to believe all, part, or none of Mark Smith's testimony. In doing so, you may consider the type of the crime committed, how long ago it was committed, and how it may affect the likelihood that he testified truthfully in this case.
>
> So there are two types of crimes—we call them "crimen falsi"—that you're allowed to consider in determining credibility only. Not that [Smith is] a bad person or he's a criminal, but he committed a crime where at the heart of that crime is some type of dishonesty, and that's a relevant factor for you to consider in weighing the credibility of his testimony, and for that purpose only we are advising you of that prior conviction in making that determination as to how, if at all, it affects his credibility on the witness stand.

N.T., 4/27/21, at 286–287.

On appeal, Williams argues that Smith's prior criminal case was relevant to Williams' reasonable belief that his life was in danger. He notes similarities between Smith's actions in the prior case and in this case, which he asserts he should have been allowed to explore at trial. Williams concludes that the jury should have known about Smith's prior similar conduct, which would have affected its deliberations.

Our review recognizes that evidentiary rulings are within the discretion of the trial court; we will reverse an evidentiary ruling only if the trial court abused its discretion. *Commonwealth v. Gallaway*, 283 A.3d 217, 222–23

(Pa. 2022) (citing **Commonwealth v. Le**, 208 A.3d 960, 970 (Pa. 2019)). "An abuse of discretion is not simply an error of judgment, but is an overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." **Id.** at 223 (citing **Commonwealth v. Talley**, 265 A.3d 485, 530 (Pa. 2021)).

In general, evidence of a person's character is not admissible to show that the person acted in accordance with that character on a particular occasion. Pa.R.E. 404(a)(1). Likewise, evidence that a person committed a crime "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1).

As an exception to this general rule against character evidence, our Supreme Court recognized two related purposes to admit a victim's criminal record. **Commonwealth v. Amos**, 284 A.2d 748 (Pa. 1971). "[W]here a defendant alleges self-defense, he may use his deceased victim's criminal record either (1) to corroborate his alleged knowledge of the victim's quarrelsome and violent character to show that the defendant reasonably believed that his life was in danger; or (2) to prove the allegedly violent propensities of the victim to show that the victim was in fact the aggressor."[7]

---

[7] These purposes are legally distinct from attacking a witness' character for truthfulness. **Commonwealth v. Minich**, 4 A.3d 1063, 1071–72 (Pa. Super. 2010); **see** Pa.R.E. 608, 609.

*Id.* at 751; *see* Pa.R.E. 404(a)(2)(B) (codifying the second purpose). These purposes also apply when the victim is alive. ***See Commonwealth v. Christine (Christine II)***, 125 A.3d 394, 399–400 (Pa. 2015). If the victim's criminal charges and violent acts did not result in a conviction, they are admissible only for the first purpose in ***Amos***, to corroborate the defendant's belief that his life was in danger. ***Commonwealth v. Darby***, 373 A.2d 1073, 1074–75 (Pa. 1977).

Both purposes for admitting a victim's criminal record require the defendant to establish admissibility with specific showings of probative value. ***Commonwealth v. Lehman***, 275 A.3d 513, 519 (Pa. Super. 2022). First, to corroborate a defendant's claim that he reasonably believed his life was in danger, he must show that he knew about the victim's record when he used force against the victim. ***Id.*** (citing ***Commonwealth v. Stewart***, 647 A.2d 597, 599 n.1 (Pa. Super. 1994)). Second, to prove that the victim was the aggressor, a defendant must show that the victim's crimes "are similar in nature and not too distant in time" as compared to the crimes being tried. ***Id.*** (quoting ***Commonwealth v. Christine (Christine I)***, 78 A.3d 1, 5 (Pa. Super. 2013) (*en banc*) (Mundy, J., in support of affirmance), *aff'd*, 125 A.3d 394 (Pa. 2015)). These threshold determinations are within the sound discretion of the trial court. ***Amos***, 284 A.2d 748, 752; ***accord Christine II***, 125 A.3d at 399 n.9 ("[T]rial courts may determine whether the facts are sufficiently similar on a case-by-case basis . . . .").

If a defendant claims self-defense and shows the probative value of the victim's criminal record, this evidence is admissible.  Our courts have found the exclusion of such evidence to be reversible error.  ***Commonwealth v. Beck***, 402 A.2d 1371, 1373 (Pa. 1979)[8] (granting a new trial based on exclusion of victim's conviction for assault and battery); ***see Commonwealth v. Carbone***, 707 A.2d 1145, 1155 (Pa. Super. 1998) (post-conviction case, remanding for a new trial where counsel did not present testimony that the victim had accosted another woman); ***see also Commonwealth v. Dillon***, 598 A.2d 963, 965 (Pa. 1991) (reversing based on exclusion of evidence of victim's violent propensities when drunk).

Here, Williams claimed that he acted in self-defense against Smith.  Therefore, Williams could introduce evidence of Smith's prior record upon a showing of probative value under either of the two purposes from ***Amos***.  We conclude that the trial court erred in excluding this evidence under the first purpose—corroborating Williams' claim that he feared for his life when he used force against Smith.

For Williams to use Smith's criminal history to corroborate his own mental state, he had to show that he knew of Smith's record at the time of the incident.  ***Amos***, 284 A.2d at 752.  He told the trial court that he did.  N.T., 4/26/22, at 202.  This is enough to raise a question for the jury if

---

[8] ***Beck*** was overruled in holding "that all assault convictions are sufficiently similar to demonstrate the victim's violent propensities."  ***Christine II***, 125 A.3d 394, 399 n.9.  Current law calls for a case-by-case determination.  ***Id.***

- 13 -

Williams knew about Smith's criminal involvement and if he reasonably believed his life was in danger. The trial court did not allow Williams to use Smith's record for this purpose. Instead, the court instructed the jury that it could only consider Smith's conviction for criminal trespass in determining Smith's credibility. This was a misapplication of the law and therefore an abuse of discretion. The trial court erred by ruling that Williams could not present evidence of Smith's prior criminal case as proof of Williams' own reasonable fear of Smith.[9]

The other purpose from **Amos**, using Smith's convictions to prove that Smith was the first aggressor, requires analyzing how long ago Smith's crimes occurred and how similar they were to his actions when Williams claimed self-defense. This is similar to the test for admissibility of a "common plan or scheme" under Pennsylvania Rule of Evidence 404(b)(2) and is within the discretion of the trial court. **See Amos**, 284 A.2d at 752. Here, the trial court bypassed this analysis and precluded Williams from presenting evidence of Smith's convictions as proof that Smith was the initial aggressor.[10] We observe that Smith's crimes occurred two and a half years prior to the incident

---

[9] Because this purpose relates only to Williams' fear, Williams should have been able to present evidence of charges of violent offenses against Smith, even if those charges did not result in convictions. **Darby**, **supra**.

[10] The trial court acted within its discretion by first taking the matter under advisement to determine the disposition of Smith's charges. However, once it found that Smith had been convicted, the court should have analyzed the crimes' similarity and remoteness, rather than proceed under a *crimen falsi* theory not requested by Williams.

at hand and did not require the Commonwealth to prove a physical attack. We leave it to the trial court to determine on retrial the admissibility of Smith's convictions under this purpose.

We pause to assess whether the trial court's error was harmless, which we may do *sua sponte*. **Commonwealth v. Hamlett**, 234 A.3d 486 (Pa. 2020). For this Court to find harmless error, we must be "convinced beyond a reasonable doubt that the error is harmless." **Commonwealth v. Story**, 383 A.2d 155, 162 (Pa. 1978). That is, "the error could not have contributed to the verdict. Whenever there is a reasonable possibility that an error might have contributed to the conviction, the error is not harmless." **Id.** at 164 (internal quotation marks omitted). Because the error was the *exclusion* of evidence, our inquiry is whether the exclusion only minimally prejudiced the defendant or whether, comparing the evidence of guilt and the prejudicial effect of the error, the exclusion could not have contributed to the verdict. **Commonwealth v. Jones**, 240 A.3d 881, 892 (Pa. 2020) (quoting **Commonwealth v. Fulton**, 179 A.3d 475, 493 (Pa. 2018)).

Under either standard, the error was not harmless. Mainly, the trial court's ruling prejudiced Williams by preventing him from presenting his full defense. Williams' knowledge of Smith's criminal history gives credence to his claim that he believed Smith was attacking him. By all accounts, Smith's physical interaction with Williams began abruptly. Williams made the first physical contact with Smith on the stairs. While the jury heard that the two had fought the night before, it did not hear Williams' full explanation that he

- 15 -

believed Smith to be violent based on Smith's criminal history. We cannot say based on this record that the exclusion of Williams' knowledge of Smith's criminal history did not contribute to the rejection of Williams' self-defense claim and in turn the verdict.

Therefore, we are constrained to grant Williams a new trial for his convictions for crimes in which Smith was named as the victim. ***Beck***, ***supra***. This includes aggravated assault, simple assault, and recklessly endangering Smith. ***See Commonwealth v. Fowlin***, 710 A.2d 1130, 1133 (Pa. 1998) (following ***Commonwealth v. Hilbert***, 382 A.2d 724 (Pa. 1978)) (applying self-defense to reckless endangerment). Williams' other convictions remain intact.

### 5. Sufficiency of the evidence – terroristic threats

Williams' fifth issue is a challenge to the sufficiency of the evidence to support his convictions of terroristic threats to his children. He argues that his only statement that could be construed as a threat was a message to Jackson: "I'm getting a gun and I'm coming after y'all." Williams contends that because he did not send this message to the children, the evidence is insufficient for the convictions of terroristic threats that named the children as victims.[11]

---

[11] To the extent that Williams also challenges the weight of the evidence, he waived this challenge. Pa.R.Crim.P. 607(A); ***Rivera***, ***supra***.

By statute, "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to . . . commit any crime of violence with intent to terrorize another." 18 Pa.C.S.A. § 2706(a)(1). The elements of the offense are that (1) the defendant made a threat to commit a crime of violence and (2) the threat was communicated with the intent to terrorize another. *Commonwealth v. Campbell*, 253 A.3d 346, 348 (Pa. Super. 2021) (citing *Commonwealth v. Vergilio*, 103 A.3d 831, 833 (Pa. Super. 2014)). "The offense does not require that the accused intend to carry out the threat; it does require an intent to terrorize. The harm sought to be prevented is the psychological distress which follows from an invasion of another's sense of personal security." *Commonwealth v. Hardwick*, 445 A.2d 796, 797 (Pa. Super. 1982).

For this crime, "'communicates' means conveys in person or by written or electronic means." 18 Pa.C.S.A. § 2706(e). Depending on context, making non-verbal gestures can constitute communication. *Commonwealth v. Kline*, 201 A.3d 1288, 1291 (Pa. Super. 2019). In making a threat, a defendant does not need to specify which crime of violence he intends to commit if the statement and surrounding circumstances support the inference of the type of crime. *Commonwealth v. Hudgens*, 582 A.2d 1352, 1358 (Pa. Super. 1990). A threat may be communicated indirectly, such as by posting content online. *Commonwealth v. Beasley*, 138 A.3d 39, 47 (Pa. Super. 2016). Based on the statutory purpose, a threat is not communicated

until it is received by the victim. *Id.* at 46–47 (citing *Vergilio*, 103 A.3d at 833–34).

Here, there was no evidence at trial that Williams' subsequent message to Jackson was ever received by their children. If this were the only alleged threat to the children, the evidence would be insufficient. However, this ignores Williams' statements and actions in the bedroom and the surrounding events. Jackson testified that Williams prevented his oldest child from calling 911 and his youngest child from hiding. When they were all in the bedroom, Williams cut his arm with a knife and told the children it was their mother's fault. The children could interpret Williams' statements and actions to imply that Williams would also hurt them with the knife. Therefore, the evidence is sufficient to establish terroristic threats, and Williams' fifth issue fails.

### 6. Sufficiency of the evidence – unlawful restraint

Williams' sixth issue challenges his convictions for unlawfully restraining the three children. He argues that the evidence was insufficient because the children were physically free to leave Jackson's bedroom and he never tried to restrain them or keep them in the room.

The statute provides: "If the victim is a person under 18 years of age, a parent of the victim commits a felony of the second degree if he knowingly . . . restrains another unlawfully in circumstances exposing him to risk of serious bodily injury." 18 Pa.C.S.A. § 2902(c)(1).

We find the evidence to be sufficient. The statutorily prohibited conduct is not limited to restraint by physical force. At trial, Jackson testified that Williams had threatened to kill himself if she had not gone to her bedroom. Although Williams testified that he did not want her to bring the children, Jackson interpreted Williams' statements this way. It is reasonable to infer that the children did, too. Based on this psychological force, the jury could find that Williams unlawfully restrained his children by making them go to and stay in Jackson's room. Therefore, Williams' sixth issue fails.

### 7. Jury instruction – malice and self-defense

Williams' final issue concerns the trial court's instructions to the jury. He notes that when the evidence supports a claim of self-defense, a trial court should provide a requested instruction on self-defense. *Commonwealth v. Bailey*, 471 A.2d 551, 553 (Pa. Super. 1984). Williams also indicates that an instruction on aggravated assault must require the jury to find malice in order to convict. *See Commonwealth v. Kling*, 731 A.2d 145, 147–48 (Pa. Super. 1999).

We have explained that a defendant who does not object to a jury instruction cannot challenge the instruction on appeal.

> A specific and timely objection must be made to preserve a challenge to a particular jury instruction. Failure to do so results in waiver. Generally, a defendant waives subsequent challenges to the propriety of the jury charge on appeal if he responds in the negative when the court asks whether additions or corrections to a jury charge are necessary.

*Commonwealth v. Moury*, 992 A.2d 162, 178 (Pa. Super. 2010) (citations omitted).

Here, Williams did not object to the trial court's instructions to the jury. N.T., 4/27/22, at 348. As such, he has waived his final issue.

In sum, we reverse and remand for a new trial only on the convictions for which Williams had claimed self-defense. Williams' other convictions remain intact. Mindful that this outcome may upset the sentencing scheme, we will vacate Williams' entire judgment of sentence at this docket and remand for resentencing following disposition of Williams' aggravated assault and simple assault charges. *Commonwealth v. Williams*, 997 A.2d 1205, 1210–11 (Pa. Super. 2010).

Judgment of sentence vacated. Convictions vacated at Count 2 (aggravated assault), Count 3 (simple assault), and Count 4 (recklessly endangering another person—Smith). Case remanded for new trial on Counts 2, 3, and 4. Remaining convictions affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/12/2023