COMMONWEALTH of Pennsylvania

v.

Dennis GAFFNEY, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 14, 1997.
Filed Oct. 30, 1997.

Jeanette D. Dickerson, Public Defender, Hatboro, for appellant.

Mary MacNeil Killinger, Executive Asst. Dist. Atty., Norristown, for Com., appellee.

Before CIRILLO, President Judge Emeritus, and SAYLOR and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

Dennis Gaffney (appellant) appeals from a judgment of sentence entered on December 23, 1996, by the Court of Common Pleas of Montgomery County. We affirm.

On December 31, 1995, appellant invited a nine-year-old neighborhood girl into his home. Once the girl was inside, appellant removed his pants and exposed his genitals to the child. He then proceeded to pull down her pants, and violated the girl's vagina orally and manually. Afterwards, the victim fled the house crying hysterically. The father of the victim found her soon after and called the police.

On October 19, 1996, appellant pled guilty to the charges of involuntary deviate sexual intercourse, aggravated indecent assault, and corruption of minors and was sentenced to six (6) to thirty (30) years' incarceration. Appellant filed two motions to reconsider this sentence, both of which were denied. Appellant now argues that the lower court's denial of the second motion violated his due process rights. We disagree.

In addition to his prison term, appellant is also subject to the registration provisions of 42 Pa.C.S.A. § 9793, more commonly known as Megan's Law (hereinafter Megan's Law). This law became effective four months after the above incident occurred. Appellant therefore claims that, as applied to his case, Megan's Law is an impermissible ex post facto law. Again, we disagree.

## I. Due Process Violation

■ Appellant argues that his due process rights were violated because a hearing was not held, and consequently he was not pres-ent, when the lower court denied his Petition for Reconsideration of Order Denying Defendant's Petition for Reconsideration and/or Modification of Sentence. The lower court was in full compliance with Rule of Criminal Procedure 1410(B)(2)(b), which provides that a judge shall "determine whether a hearing or argument on the motion is required." The Comment to this rule further explains, "[t]here is no requirement that oral argument be heard on every post-sentence motion." Even when argument is heard, the Comment states, "the defendant need not be present." Rule 1410 makes it clear that the trial judge has discretion in deciding whether to hear oral argument on a particular motion.

Since appellant does not argue that the trial court abused its discretion, and the court was otherwise in compliance with Rule 1410, we can only assume that appellant is arguing that the rule itself violates due process. The only case which appellant cites in support of this proposition is *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977). *Riggins,* however, requires "a trial court to state, on the record, the reasons for the sentence imposed." *Id.,* 377 A.2d at 149. At appellant's sentencing hearing such reasons were recorded; this appeal is instead from the denial of his motion to reconsider the results of that hearing. Thus, *Riggins* is inapposite to this appeal. Because appellant presents no case law in support of his position, and absolutely no argument otherwise, we dismiss this claim. *See Commonwealth v. Luktisch,* 451 Pa.Super. 500, 680 A.2d 877, 879 n. 1(1996).

## II. The Ex Post Facto Challenge to Megan's Law

### A. The United States Constitution

■ In the United States Constitution, the ex post facto clause provides, "[n]o state shall ... pass any ... ex post facto law." U.S. Const. Art. I, § 10. Appellant argues that the registration provisions of Megan's Law are punishment, and therefore violate this clause by impermissibly "chang[ing] the punishment, and inflict[ing] a greater punishment, than the law annexed to the crime, when committed." *See* appellant's brief at 11

(citing *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798)). We disagree.

What constitutes "punishment" in this context was recently addressed by two complementary United States Third Circuit cases, *Artway v. Attorney General,* 81 F.3d 1235 (1996), and *E.B. v. Verniero,* 119 F.3d 1077 (1997). The *Artway* court thoroughly considered Supreme Court precedent and derived a comprehensive test to determine when a legislative act qualifies as punishment. *Artway, supra,* at 1263. Shortly after *Artway,* two Supreme Court decisions, *United States v. Ursery,* 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), and *Kansas v. Hendricks,* —— U.S. ——, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), deviated from *Artway* insofar as the decision purported to establish a test for punishment in all contexts. *See Verniero, supra,* at 1093–94. In light of *Ursery* and *Hendricks,* the Third Circuit refined the *Artway* formulation and reaffirmed its applicability to legislative measures such as Megan's Law. *See id.* at 1093–1104.

At present, the Third Circuit will consider a measure punishment if: (1) the legislature's actual purpose is punishment, (2) if the "objective" purpose is punishment, or (3) if the effect of the statute is so harsh that "as a matter of degree" it constitutes punishment. *Id.* at 1093. The "objective" prong of this test focuses on "whether analogous measures have traditionally been regarded in our soci-

ety as punishment," and has three subparts: (A) "proportionality—whether the remedial purpose of [the measure] ... can explain all the adverse effects on those involved," (B) whether the measure has been historically considered punishment, and (C) whether the measure serves both a remedial and a deterrent purpose. *Id.* If question (C) is answered in the affirmative, then a measure will be considered punitive if: (a) the "deterrent purpose is an unnecessary complement to the measure's salutary operation," (b) "the measure is operating in an unusual manner inconsistent with its historically mixed purposes," or (c) "the deterrent purpose overwhelms the salutary purpose."[1] *Id.* After applying this comprehensive test, the *Artway* court concluded that the registration provisions in New Jersey's version of Megan's Law are not punishment. *Artway, supra,* at 1267. Because the measure did not punish, the Ex Post Facto Clause was not violated. *Id.*

We note that, as lower federal court decisions, neither *Artway* nor *Verniero* are binding upon this Court. *See Commonwealth v. Giffin,* 407 Pa.Super. 15, 595 A.2d 101 (1991). Since the federal Supreme Court has not ruled on this issue, however, it is appropriate for this Court to follow these Third Circuit cases. *See Nobers v. Crucible, Inc.,* 431 Pa.Super. 398, 636 A.2d 1146 (1994). Because we find the reasoning of *Artway* and

---

1. The full text of the test is as follows:

A measure must pass three-prong analysis—(1) actual purpose, (2) objective purpose, and (3) effect—to constitute non-punishment ...

[W]e first look to whether the adverse effect on individuals results from a desire on the part of the legislature to punish past conduct or is a by-product of a bona fide legislative effort to remedy a perceived societal problem ...

The second inquiry—into "objective purpose"—focuses on the operation of the legislative measure and on whether analogous measures have traditionally been regarded in our society as punishment ... there [are] three aspects that should be considered by a court ... It is important to consider the measure's proportionality—whether the remedial purpose of a legislative measure purporting to be non-punitive can explain all the adverse effects on those involved ... It is also important to consider history. If analogous measures have

traditionally been regarded by our society as "serv[ing] punitive purposes" and the text and the legislative history do "not make [the legislature's] plausible remedial purposes clear," there is an objective basis for regarding the measure as punishment. Finally ... some measures are intended to have a mixed salutary and deterrent effect. Such mixed measures will not be deemed to have an objectively punitive purpose despite their deterrent purpose unless that deterrent purpose is an unnecessary complement to the measures salutary operation, the measure is operating in an unusual manner inconsistent with its historically mixed purposes, or the deterrent purpose overwhelms the salutary purpose.

The final prong ... examines whether the effect—or 'sting'—of a measure is so harsh 'as a matter of degree' that it constitutes 'punishment.' This prong necessarily involves difficult line-drawing.

*Verniero* convincing, we follow them accordingly. *See North Penn Consumer Discount Co. v. Shultz*, 250 Pa.Super. 530, 378 A.2d 1275 (1977). The *Artway/Verniero* formulation considers a complicated area of constitutional law and harmonizes the relevant Supreme Court cases into a workable analytical framework. Though both the *Ursery* and *Hendricks* decisions affected the original *Artway* test to some degree, we are confident that *Verniero* sufficiently accords these later decisions in the present context. Insofar as Megan's Law and the federal constitution are concerned, we are satisfied that the *Artway/Verniero* test appropriately applies applicable Supreme Court precedent.

*Artway* held that the registration provisions of New Jersey's Megan's Law are constitutional. We must decide if there is any substantive distinction between the New Jersey statute considered in *Artway* and the Pennsylvania version before this Court. After carefully comparing the two statutes, we discern no meaningful difference between their respective registration provisions. The stated policy behind the Pennsylvania statute is "to protect the safety and general welfare of the people of this Commonwealth ..." 42 Pa.C.S.A. § 9791. The *Artway* court considered analogous language in the New Jersey statute,[2] and concluded that such policy indicates non-punitive, regulatory purposes of protecting the public and preventing crimes. *Artway, supra,* at 1264 (citations omitted).

Likewise, the coverage qualifications and the registration mechanism of the two statutes are essentially indistinguishable. Both

predicate the application of the statute upon the commission of certain crimes related to either sexual behavior or the minor status of the victim. *Compare* 42 Pa.C.S.A. § 9793(b) *with* N.J.S.A. § 2C:7–2. Further, both statutes require the offender to register personal information with the State Police, who then provide the information to the appropriate local authorities. *Compare* 42 Pa.C.S.A. § 9793(a),(c) *with* N.J.S.A. § 2C:7–2 c. and 2C:7–4 b.,c. Finally, the failure to register prompts similar criminal sanctions under both statutory schemes. *Compare* 42 Pa. C.S.A. § 9793(e) *with* N.J.S.A. § 2C:7–2a.

Given the substantive identity of the Pennsylvania and New Jersey statutes, the only avenue open to appellant is to show the Pennsylvania statute fails the effects prong of the *Artway* test. Appellant, however, has not provided any evidence that the effects of the instant statute are any different than those of the New Jersey statute. Consequently, we hold that the Pennsylvania Megan's Law registration provisions do not violate the Ex Post Facto Clause of the U.S. Constitution.

## B. The Pennsylvania Constitution

We now turn to the validity of Megan's Law under the Ex Post Facto provision in the Pennsylvania Constitution,[3] which states, "[n]o ex post facto law ... shall be passed." Pa. Const. Art. 1, § 17. The virtual identity of the text of our ex post facto clause to that contained in the federal provision is not coincidental—both were motivated by the same pre-revolutionary-war concerns. *Common-*

*Verniero, supra,* at 1093 (citations omitted).

2. The legislative findings stated in the New Jersey statute are:

   A. The danger of recidivism posed by sex offenders and offender who commit other predatory acts against children and the dangers posed by persons who prey on others as a result of mental illness, require a system of registration that will permit law enforcement officials to identify and alert the public when necessary for the public safety.
   B. A system of registration of sex offenders and offenders who commit other predatory acts against children will provide law enforcement with additional information critical to

preventing and promptly resolving incidents involving sexual abuse and missing persons. N.J.S.A. § 2C:7–1.

3. Unfortunately, appellant has not provided much in the way of analysis in support of this state claim. This would have been an appropriate place to heed the advice of the Pennsylvania Supreme Court in *Edmunds* and provide a fully developed state constitutional argument. *Commonwealth v. Edmunds*, 526 Pa. 374, 390, 586 A.2d 887, 895 (1991). The lack of such analysis, however, is not fatal. *See Commonwealth v. White*, 543 Pa. 45, 669 A.2d 896, 899 (1995). Therefore, appellant's brevity notwithstanding, we shall proceed in disposing of the instant state Ex Post Facto claim.

*wealth v. Young,* 536 Pa. 57, 637 A.2d 1313, 1317 n. 7 (1993). Not surprisingly, "the standards applied to determine an ex post facto violation under the Pennsylvania Constitution and the United States Constitution are comparable." *Id.*

◼ This is not to say, however, that discharging appellant's federal constitutional claim automatically terminates our inquiry. To the contrary, it is well settled that "[h]ere in Pennsylvania ... it is both important and necessary the we undertake an independent analysis of the Pennsylvania Constitution, each time a provision of that fundamental document is implicated." *Edmunds, supra,* at 894. Where there is a compelling reason to do so, we are to construe the Pennsylvania Constitution as providing greater rights than the federal constitution. *Interest of B.C.,* 453 Pa.Super. 294, 683 A.2d 919, 927 (1996)(citing *Commonwealth v. Gray,* 509 Pa. 476, 484–85, 503 A.2d 921, 926 (1985)). We now consider whether the present case provides such a compelling reason.

Clear guidance was last provided by our Supreme Court concerning Pennsylvania's ex post facto prohibition in *Commonwealth v. Young,* 536 Pa. 57, 637 A.2d 1313, 1317 n. 7 (1993). In *Young,* the Court stated, *"[a]s our interpretation* of the state constitutional prohibition against ex post facto laws *has been consistent with* that of the United states Supreme Court's interpretation of the federal prohibition, the analysis of appellant's federal ex post facto claim disposes of his state claim as well." *Id.,* 637 A.2d at 1317, n. 7 (emphasis added). The emphasized language makes clear that the federal ex post facto standards prior to the *Young* decision are applicable to state ex post facto claims. The very same language, however, also indicates that the provisions are not substantively identical. The *Young* Court merely found that, at that time, there was no reason to deviate from federal precedent.

Since the *Young* decision, substantial developments have occurred in federal ex post facto jurisprudence, which may impact the harmony between the U.S. and Pennsylvania constitutions. *See Artway, supra* at 1254 (recognizing the confused state of federal law regarding punishment); *United States v. Ursery, supra* (civil forfeitures do not constitute punishment regardless of whether forfeited property may be in excess of harm triggering forfeiture); *Kansas v. Hendricks, supra* (possible indefinite civil commitment does not constitute punishment). In light of Pennsylvania's recognition of greater constitutional protections in other areas, it is quite possible that our state Ex Post Facto Clause no longer parallels its federal counterpart. This being said, however, we find that the case sub judice does not present a proper departure point.

As discussed earlier, there is no evidence that the legislature intended this provision to punish appellant. Further, the only information which appellant must provide is his current address. *See* 42 Pa.C.S.A. § 9793(a). Appellant's address is only given to the Pennsylvania State Police, who forward it to the chief law enforcement officer in the municipality where the appellant resides. *See id.* at § 9793(c). This information is to be periodically confirmed via a nonforwardable verification form sent to appellant at his last known address. *See id.* at § 9796(a). We fail to see any harsh effects, other than a momentary inconvenience, that could result from appellant's complying with these registration provisions.[4]

In light of the relatively unobtrusive nature of the Megan's Law registration provisions, we do not find this case presents any compelling reason to depart from federal standards. Because the provisions were not intended to punish, and their effects are not onerous enough to be considered punishment under the federal standards adopted by the *Young* court, we conclude that Megan's law registration provisions do not violate Penn-

---

**4.** We note that appellant is not subject to the statute's more burdensome "notification" procedures. *See* Pa.C.S.A. §§ 9794–9799.4. In what can only be described as responsible lawmaking, the Legislature has specifically excluded past offenders from the statute's notification requirements, presumably to steer clear of any ex post

sylvania's ex post facto prohibition.[5]

Judgment of sentence affirmed.

---

facto prohibition. *See* Act 1995–24 § 3 (Spec.Sess. No. 1)(1995).

**5.** Several other states have likewise concluded that similar provisions are not punishment. *See e.g., Kitze v. Commonwealth* 23 Va.App. 213, 475 S.E.2d 830 (1996); *State v. Myers,* 260 Kan. 669, 923 P.2d 1024 (1996); *Washington v. Ward,* 123 Wash.2d 488, 869 P.2d 1062 (1994); *State of Arizona v. Noble,* 171 Ariz. 171, 829 P.2d 1217, 1219–1220 (1992).