## Commonwealth v. Wolff

C.P. of Bucks County, no. 4297/1997.

*Maggie Snow, chief deputy district attorney,* for Commonwealth.

*Ann Faust, deputy public defender,* for defendant.

GARB, *P.J.,* May 6, 1998—Defendant entered pleas of guilty to two counts of statutory sexual assault[1] and two counts of involuntary deviate sexual intercourse[2] as well as lesser included related offenses. On each of the two charges of involuntary deviate sexual intercourse, both being felonies of the first degree, he

---

1. 18 Pa.C.S. §3122.1.
2. 18 Pa.C.S. §3123(a)(7).

was sentenced to incarceration in a state correctional facility for a period of not less than 10 nor more than 20 years consecutively to one another. With respect to the charges of involuntary deviate sexual intercourse, the Commonwealth invoked the mandatory sentencing provisions of the Mandatory Sentencing Act,[3] thus mandating a sentence of total incarceration of not less than five years. The Commonwealth likewise invoked the provisions of Pennsylvania's version of Megan's Law,[4] for purposes of the statutorily prescribed mandatory sentence. As noted, we declined to invoke that provision of Megan's Law, and rather, imposed a sentence as provided for by the Crimes Code for the crimes involved.

Subsequent to the entry of the plea of guilty, and prior to sentence, defendant asserted a number of constitutional challenges to the various provisions of Megan's Law. Initially, defendant challenged the registration provisions.[5] Even if we assume that that challenge is now ripe for determination, it is clear that that issue has now been decided by the United States Third Circuit Court in construing the New Jersey Megan's Law, which, with respect to registration, is virtually indistinguishable from the Pennsylvania statute. See *Artway v. Attorney General of the State of New Jersey*, 81 F.3d 1235 (3d Cir. 1996). See also, *Commonwealth v. Gaffney*, 702 A.2d 565 (Pa. Super. 1997) adopting the *Artway* decision as the law of Pennsylvania at least with respect to the application of the challenge to the registration provisions as being an ex post facto law.

---

3. 42 Pa.C.S. §9718.
4. 42 Pa.C.S. §9791.
5. 42 Pa.C.S. §9793.

Defendant likewise challenges the notification provisions of the law.[6] However, inasmuch as these provisions are only triggered by a finding that the defendant is a sexually violent predator, in view of our discussion *infra,* there is no occasion to address this issue.[7]

The issue we address is the constitutionality of section 9794[8] of Megan's Law. That section deals with the designation of sexually violent predators. Subsection (a) provides that after conviction, but before sentencing, the court shall order a person convicted of any of the predicate offenses of the Act to be assessed by the State Board to Assess Sexually Violent Predators. The Act further provides in subsection (b) that an offender convicted of any of the predicate offenses shall be presumed by the board and the court to be a sexually violent predator but that this presumption may be rebutted by the offender by clear and convincing evidence at a hearing held in accordance with subsection (e).[9] That section provides for a court review of the findings of the board, and after hearing, a determination of whether the offender shall be designated a violent sexual

---

6. 42 Pa.C.S. §9798.

7. With respect to the notification provisions of the New Jersey Megan's Law, see *E.B. Verniero,* 119 F.3d 1077 (3d Cir. 1997) wherein the Third Circuit held that the notification provisions of the New Jersey law did not violate the ex post facto or double jeopardy clauses of the United States Constitution. However, that court held that the due process clause would be violated by any notification that occurred without a prior opportunity to challenge the registrant's classification and notification plan in a hearing at which the prosecutor has the burden of persuasion and must prove his or her case by clear and convincing evidence.

8. 42 Pa.C.S. §9794.

9. Strangely, the Act does not provide for what weight or effect the determination of the board has on the hearing held pursuant to subsection (e).

offender. As noted, for that purpose, the offender has the burden of proving that he is not such an offender by clear and convincing evidence. The significance of that section is realized in section 9799.4.[10] wherein it is provided in subsection (a) that upon the court's finding that the offender is a sexually violent predator, his maximum term of confinement for any of the predicate offenses shall be increased to the offender's lifetime, notwithstanding lesser statutory maximum penalties for these offenses. In subsection (c), it is provided that when a person who has been designated as a sexually violent predator is convicted of a subsequent sexually violent offense, the mandatory sentence shall be life imprisonment. Considering the effect of the designation of the offender as a violent sexual predator under section 9799.4, it is our determination that the presumption of such status of section 9794 and the imposition of the burden of proof upon the offender by clear and convincing evidence that he is not such an offender, violates both the United States and Pennsylvania Constitutions.

With respect to the due process provisions of the Fourteenth Amendment of the United States Constitution, it is held in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068 (1970) that proof of a criminal charge beyond a reasonable doubt is constitutionally required. Similarly, pursuant to the due process provisions of Article I, Section 9 of the Pennsylvania Constitution, a conviction cannot be sustained except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged, the burden upon the Commonwealth. *Commonwealth v. McFarland,* 252 Pa. Super. 523, 382 A.2d 465 (1977).

_____

10. 42 Pa.C.S. §9799.4.

The reach and thrust of *Winship* was considered in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881 (1975). In that case, the Supreme Court was considering the homicide statute of the State of Maine which provided murder consisted of an intentional killing whereas the homicide could be reduced to manslaughter upon a showing that the defendant acted in the heat of passion on sudden provocation. However, the statute further provided that the burden of proving that the accused acted in the heat of passion on sudden provocation was placed upon the offender. In applying the *Winship* standard, the Supreme Court held that that statute was in violation of the due process provisions of the Fourteenth Amendment of the United States Constitution. In addressing the contention by the State of Maine that the issue of heat of passion on sudden provocation was not an element of the offense, but rather should be treated as an affirmative defense, the Supreme Court stated as follows:

"This analysis fails to recognize that the criminal law of Maine, like that of other jurisdictions, is concerned not only with guilt or innocence in the abstract, but also with the degree of criminal culpability. Maine has chosen to distinguish those who kill in the heat of passion from those who kill in the absence of this factor. Because the former are less 'blameworth(y),' *State v. Lafferty,* 309 A.2d at 671, 673 (concurring opinion), they are subject to substantially less severe penalties. By drawing this distinction, while refusing to require the prosecution to establish beyond a reasonable doubt, the fact upon which it turns, Maine denigrates the interest found critical in *Winship.*

"The safeguards of due process are not rendered unavailing simply because a determination may already have been reached that would stigmatize the defendant

and that might lead to a significant impairment of personal liberty. The fact remains that the consequences resulting from a verdict of murder, as compared with a verdict of manslaughter, differ significantly. Indeed, when viewed in terms of the potential difference in restrictions of personal liberty attendant to such conviction, the distinction established by Maine between murder and manslaughter may be of greater importance than the difference between guilt or innocence for many lesser crimes." 95 S.Ct. at 1889.

In considering the argument of the State of Maine that the distinctions between murder, voluntary manslaughter and involuntary manslaughter, depend solely on intent, the Supreme Court in *Mullaney* opines that an offender could be convicted of felonious homicide and sentenced to life imprisonment unless he was able to prove the requisite heat of passion as the polestar of voluntary manslaughter or recklessness as that of involuntary manslaughter. With respect to this observation, the Supreme Court stated as follows:

"*Winship* is concerned with substance rather than this kind of formalism. The rationale of that case requires an analysis that looks to the 'operation and effect of the law as applied and enforced by the state,' *St. Louis S.W.R., Co. v. Arkansas,* 235 U.S. 350, 362, 35 S.Ct. 99, 102, 59 L.Ed. 265 (1914), and to the interests of both the state and the defendant as effected by the allocation of the burden of proof." *Mullaney v. Wilbur,* 95 S.Ct. 1890.

Thus, *Mullaney* holds the doctrine of *Winship* goes beyond the mere formalism of determining guilt or innocence but also to those matters relevant to the prosecution having a significant impact upon the liberty rights of the accused.

At first blush, one might conclude that *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319 (1977) rep-

resented a step back from *Mullaney*. The court in *Patterson*, of course, acknowledged the viability of *Winship*. In addressing the holding of *Mullaney*, it recognized that the Supreme Court had held that the burden of proof could not constitutionally be placed on the defendant proving by a preponderance of the evidence that the killing had occurred in the heat of passion on sudden provocation as was the law of Maine. The court in *Patterson* further recognized that the chief justice and Mr. Justice Rhenquist in *Mullaney* concurred in the result and called attention to the fact that the court did not call into question the holding in *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002 (1952) holding that it was not a violation of due process principles to impose the burden upon a criminally accused of proving insanity as a defense to the crime. The court in *Patterson* was considering a New York conviction in which the burden was placed consistent with the law of the State of New York upon the defendant of proving affirmative defense. Thus, *Patterson* stands for the proposition that it is not a violation of the Fourteenth Amendment to place the burden of proof of affirmative defenses by a preponderance of the evidence upon the defendant so long as it is understood that all elements of the criminal charge must be proven by the prosecution beyond a reasonable doubt. Significantly, that is likewise the law of Pennsylvania with respect to the due process provisions of Article I, Section 9 of the Pennsylvania Constitution. See *Commonwealth v. Stawinsky,* 234 Pa. Super. 308, 339 A.2d 91 (1975); *Commonwealth v. McFarland, supra,* and *Commonwealth v. Hilbert,* 476 Pa. 288, 382 A.2d 724 (1978). In fact, the due process rights as contained in the Fourteenth Amendment of

the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution are essentially co-extensive. *Commonwealth v. Clutter,* 419 Pa. Super. 275, 615 A.2d 362 (1992), *allocatur denied,* 535 Pa. 644, 633 A.2d 149 (1993).

Bearing these principles in mind, the question is then reduced to whether the designation as a sexually violent predator as created by this statute and the mandatory sentencing consequences thereof, fall within the reach of *Winship* and *Mullaney.* We believe that they do. *Winship* involved a proceeding against a juvenile, and the question was whether the juvenile, in a proceeding for delinquency, was entitled to the due process protections of the Fourteenth Amendment of the United States Constitution placing the burden upon the prosecution of proof beyond a reasonable doubt. The court therein held, that in view of the extreme consequences of incarceration which could result from a finding of delinquency, due process did so require. Similarly, *Mullaney* reached the same conclusion regarding the extremity of the result where the burden of proof was thrust upon the defendant regarding proof of matters which would constitute, not an affirmative defense, but rather the elements of a lesser offense. *Patterson* does not detract from either of those cases. Under the scheme devised by the legislature in Megan's Law, the effect of the determination of whether the defendant is a sexually violent predator is extreme. Upon such a finding, as previously noted, on a first offense, the mandated maximum sentence is life imprisonment, and the mandated sentence on the second offense is life imprisonment. Although many of the predicate offenses are felonies of the first degree for which the maximum

sentence could be 20 years, with respect to prostitution, one of the predicate offenses, a felony of the third degree, the maximum sentence is seven years.

We have no difficulty in determining that this sentencing structure constitutes punishment as the sanction as applied to the individual serves the goals of punishment. Those goals are that punishment serves the twin aims of retribution and deterrence. Retribution and deterrence are not legitimate nonpunitive governmental objectives. *U.S. v. Halper,* 490 U.S. 435, 109 S.Ct. 1892 (1989). See also, *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801 (1993); *Department of Revenue v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937 (1994) and *California Department of Corrections v. Morales,* 514 U.S. 499, 115 S.Ct. 1597 (1995) which shifted the focus of the law's purpose to its effect and establishing that the appropriate punishment analysis is flexible and context dependent. These cases were synthesized in Pennsylvania in terms of an ex post facto analysis in *Commonwealth v. Gaffney, supra,* adopting the analysis of the Third Circuit as the law of Pennsylvania and providing that a measure is punishment if (1) the legislature's actual purpose is punishment, (2) if the objective purpose is punishment, or (3) if the effect of the statute is so harsh that as a matter of degree it constitutes punishment.[11]

---

11. These United States Supreme Court decisions as well as *Artway,* of course, construe those statutes in terms of due process, double jeopardy, and ex post facto considerations under the United States Constitution. However, the Pennsylvania Constitution with respect to these concepts is co-extensive with the United States Constitution. See *Commonwealth v. Gaffney, supra,* and *Commonwealth v. Mattis,* 454 Pa. Super. 605, 686 A. 2d 408 (1996), *allocatur denied,* 547 Pa. 752, 692 A.2d 564 (1997).

A review of the legislative findings and declaration of policy by the legislature in enacting this legislation is instructive. Subsection (a) deals with the legislative findings and declares as a matter of legislative finding essentially that the public for its own protection has a right to be informed of the fact that a sexually violent predator has been released and where he will reside so that appropriate actions for the protection of the community can be taken. Subsection (b) of that section contains the declaration of policy as follows:

"It is hereby declared to be the intention of the General Assembly to protect the safety and general welfare of the people of this Commonwealth by providing for registration and community notification regarding sexually violent predators who are about to be released from custody and will live in or near their neighborhood. It is further declared to be the policy of this Commonwealth to require the exchange of relevant information about sexually violent predators among public agencies and officials and to authorize the release of necessary and relevant information about sexually violent predators to members of the general public as a means of assuring public protection and shall not be construed as punitive."

Obviously, these legislative findings and declaration of policy address the public notification sections and provisions of this legislation but make no mention of the mandatory sentencing provisions of persons determined to be violent sexual predators. A declaration that these provisions shall not be construed as punitive, aside from the fact that it is self-serving, address only the legislative findings and the declaration of policy all relating to notification but not to mandatory sentencing. It is abundantly clear that this sentencing scheme is punitive aimed at retribution and deterrence, at least

to the extent that a life sentence would deter this offender from again offending.

*McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411 (1986) is somewhat instructive although not directly on point. In that case, the Supreme Court was considering the constitutionality of the Pennsylvania Mandatory Sentencing Law,[12] which provides that any person convicted of a designated number of violent offenses shall, if the person visibly possessed a firearm during the commission of the offense, be sentenced to a mandatory minimum sentence of at least five years. The Act further provides that at the time of sentencing, the court must be satisfied by a preponderance of the evidence, that such a firearm was visibly displayed. By virtue of the affirmative nature of this fact, the burden was obviously placed upon the Commonwealth but by preponderance of the evidence rather than beyond a reasonable doubt. The constitutional issue raised by the appellants in that case was the constitutionality of reducing the burden of proof upon the Commonwealth from beyond a reasonable doubt to a preponderance of the evidence (or at least to clear and convincing). The Supreme Court held that this did not constitute a violation of the due process provisions of the Fourteenth Amendment because the fact to be proved was not an element of the offense but rather a consideration for sentencing. The court returned to *Mullaney* and its holding that once the state proved the elements required by the Maine law beyond a reasonable doubt, the defendant faced "a differential in sentencing ranging from a nominal fine to a mandatory life sentence." 421 U.S. at 700, 95 S.Ct. at 1890. In the case before the court in *McMillan,* the court observed that the situation was

---

12. 42 Pa.C.S. §9712.

quite different. It pointed out that the predicate offenses are all either felonies of the first degree or felonies of the second degree with maximum sentences of 20 years for the former and 10 years for the latter. Section 9712 of the Judicial Code, acknowledged by *McMillan,* neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty.

"It operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm. Section 9712 'ups the ante' for the defendant only by raising to five years the minimum sentence which may be imposed within the statutory plan. The statute gives no impression of having been tailored to permit the visible possession finding to be *a tail which wags the dog of the substantive offense." McMillan v. Pennsylvania,* 106 S.Ct. at 2417. (emphasis added)

Megan's Law not only shifts the burden to the defendant but imposes a burden of proof of clear and convincing evidence,[13] and also increases the penalty from what could be a maximum sentence of seven years to life imprisonment. This does not just "raise the ante" but rather, it is truly a "tail which wags the dog of the substantive offense."

Lastly, the court in *McMillan* cited and distinguished *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209 (1967) in which the Colorado scheme of sentencing at issue

---

13. Clear and convincing evidence has been defined as evidence that is virtually indisputable, *In re Fiori,* 438 Pa. Super. 610, 652 A.2d 1350 (1995), *allocatur granted,* 540 Pa. 600, 655 A.2d 989 (1995) and testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. *Paulshock v. Bonomo,* 443 Pa. Super. 409, 661 A.2d 1386 (1995).

provided conviction of a sexual offense otherwise carrying a maximum penalty of 10 years exposed a defendant to an indefinite term to and including life imprisonment if the sentencing judge made a post-trial finding that the defendant posed "a threat of bodily harm to members of the public, or is an habitual offender and mentally ill." The court in *Specht* as acknowledged by *McMillan,* required that for such finding, due process principles apply. We believe that they likewise apply here including the due process principle, at the very least, placing the burden of proof upon the Commonwealth.

Defendant also challenges the definition of sexual violent predator as contained in section 9792 of the Act.[14] In view of the foregoing discussion, it is unnecessary to address this issue.

_____

14. 42 Pa.C.S. §9792.