J. S55003/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ANTHONY JEFFERSON, | : | No. 884 WDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, August 5, 2013,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0012737-2012

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., AND STRASSBURGER, J.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED OCTOBER 13, 2015**

Anthony Jefferson appeals from the August 5, 2013 judgment of sentence following his conviction of first-degree murder, robbery, and conspiracy to commit robbery.[1]  We affirm.

The trial court has set forth the underlying facts of this matter as follows:

> At approximately 1:00 PM on November 14, 2011, Joseph Boone arrived in the 2100 block of Bentley Drive, a housing project in the Hill District section of the City of Pittsburgh, Allegheny County, and began talking with friends.  Several days prior, Azsion Upshur, Anthony Jefferson (Appellant), and Raymond Pendleton planned to rob Boone.  They targeted Boone because they knew him to sell marijuana, and believed he would have cash on him.

---

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(a), 3701(a)(i) and (ii), and 903(a)(1), respectively.

According to their plan, Pendleton was to lure Boone into the hallway of a building and then call Upshur and Appellant to complete the robbery. Pursuant to this plan, when Boone arrived in the afternoon of November 14, Pendleton called Upshur and stayed on the phone with him as he beckoned Boone into the hallway of 2112 Bentley Drive. Once Boone was in the hallway, Upshur notified Appellant and both immediately headed to the site.

When Boone saw Appellant and Upshur running towards the hallway in masks he attempted to escape by running up the interior steps of the building. Appellant instructed Pendleton to leave the area, and Appellant and Upshur pursued Boone up the steps. Appellant was armed with a revolver even though the use of a firearm was not specifically part of the original plan. Appellant and Upshur fought with Boone as they tried to rob him, dragging him back down the steps and striking his head several times against the mailboxes inside the hallway on the first floor. The struggle caused Boone to wriggle out of his several shirts, both shoes, and a sock in his effort to get free. Shirtless and shoeless, Boone yelled, "take it, take it, you can have it," as he managed to flee into the courtyard. As Boone ran away Appellant followed and shot him in the hip, causing Boone to fall to the ground in the courtyard. Appellant caught up to Boone, stood over him, and shot him a second time. Appellant and Upshur fled the area together.

Several neighbors moved Boone from the courtyard to the curb so that paramedics could more easily reach him. While awaiting the medics, Pendleton approached the area where Boone lay on the sidewalk. Boone pointed at him and said, "your niggas did this to me." Boone was transported to Mercy Hospital where he underwent emergency surgeries in an attempt to save his life, but these efforts were to no avail. Boone suffered multiple blunt force injuries, head trauma, lacerations to the back of his head and face, a gunshot wound to the right abdomen and a gunshot wound to the right hip.

Boone died as a result of a perforating gunshot wound of the trunk which lacerated his liver and aorta. The medical examiner was able to determine that the muzzle of the firearm was less than three feet away from Boone's body when the fatal shot was fired.

Pendleton called Appellant and Upshur later that day about what occurred. Both Appellant and Upshur admitted they shared approximately $200 taken from Boone, and Appellant stated, "My bad bro, I didn't mean for things to go this far." In response Upshur stated, "You know how things go. We got a couple of dollars." Based upon interviews of Pendleton and several other witnesses, Appellant was interviewed. Appellant told police that he robbed Boone at gunpoint and shot him twice following a struggle for the gun. Appellant was charged as noted hereinabove.

Trial court opinion, 4/15/15 at 6-8 (citations and footnotes omitted). The

trial court summarized the procedural history of this case as follows:

[Appellant] was charged by criminal information with one count of criminal homicide, two counts of conspiracy, one count of person not to possess a firearm, one count of robbery, and one count of carrying a firearm without a license.

Appellant proceeded to a jury trial on May 13-20, 2013, at the conclusion of which Appellant was found guilty of first degree murder, robbery, and conspiracy to commit robbery; he was found not guilty of the firearms charge.

On August 5, 2013, Appellant was sentenced by the Trial Court to the following: Count one: first degree murder – life imprisonment; Count two: robbery – six to twelve years incarceration to be served consecutive to the period of incarceration imposed at count one; Count four: conspiracy to commit robbery – six to twelve years incarceration to

- 3 -

be served consecutive to the period of incarceration imposed at count two.

On August 8, 2013, Appellant filed a post sentence motion, which was denied by the Trial Court on November 27, 2013.

On April 15, 2014, the Trial Court granted Appellant's PCRA Petition to reinstate his appellate rights ***nunc pro tunc***, and ordered that the notice of appeal be filed no later than May 29, 2014.

On May 29, 2014, Appellant filed a notice of appeal, [and the Trial Court filed an opinion pursuant to Pa.R.A.P. 1925.]

Trial court opinion, 1/15/15 at 2-3 (citations and footnotes omitted).

Appellant has raised the following issues for our review:

I. Whether the trial court erred in failing to grant appellant's motion to suppress his statement on the grounds that the statement was not voluntarily given and was obtained in violation of appellant's ***Miranda*** rights?

II. Whether the trial court erred in failing to grant appellant's request to postpone trial?

III. Whether the trial court erred in admitting Commonwealth's Exhibit One (1) over appellant's objection that it was highly prejudicial and had no probative value?

IV. Whether the sentence imposed was excessive?

V. Whether the trial court erred in denying appellant's post-sentence motions without a hearing?

Appellant's brief at 9 (capitalization omitted).

The first issue for our review is whether the trial court erred in failing to grant appellant's motion to suppress his statement to police regarding the homicide of Joseph Boone ("victim"). When reviewing suppression matters, we are bound by any finding of fact by the suppression court that is supported by the record; however, any legal decisions by the suppression court are subject to *de novo* review. *Commonwealth v. James*, 69 A.3d 180, 186 (Pa. 2013) (citations omitted). Any matters concerning credibility of witnesses and the weight of evidence presented are strictly within the purview of the suppression court. *Commonwealth v. Davis*, 102 A.3d 996, 999 (Pa.Super. 2014) (citations omitted).

Our supreme court has instructed that when considering whether a waiver of *Miranda*[2] rights is valid, a court must consider the following factors:

> (1) [W]hether the waiver was voluntary, in the sense that the waiver was not the result of government pressure; and (2) whether the waiver was knowing and intelligent, in the sense that it was made with full comprehension of both the nature of the right being abandoned and the consequence of that choice.

*Commonwealth v. Patterson*, 91 A.3d 55, 76 (Pa. 2014) (citations omitted). The court further stated that factors to be considered when determining whether a waiver of *Miranda* is valid and a subsequent statement or confession is voluntary are as follows:

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

> the duration and means of interrogation; the defendant's physical and psychological state; the conditions attendant to the detention; the attitude exhibited by police during the interrogation; and any other facts which may serve to drain one's powers of resistance to suggestion and coercion.

*Id.*

The Commonwealth directs our attention to a case previously considered by this court that is analogous to the facts presently at issue. (Commonwealth's brief at 23.) In *Commonwealth v. Watkins*, 750 A.2d 308, 311 (Pa.Super. 2000), the defendant, based on a court order, was transported from the Allegheny County Jail, where he was serving time on an unrelated sentence, to the homicide offices of the Pittsburgh Police Department. After being informed of and waiving his *Miranda* rights, the defendant confessed to committing a homicide after approximately five hours of interrogation, including a polygraph test. *Id.* at 312. Much like appellant, the defendant in *Watkins* refused to allow detectives to tape record his confession, but he adopted and signed a statement written by detectives containing his confession. *Id.*

The court found that the defendant's confession in *Watkins* was voluntary. *Id.* at 314. Specifically, the court noted that:

> Although [defendant] was in police custody for nearly nine hours, appellant was subjected to only three hours and twenty-nine minutes of actual interrogation. It is not clear whether [defendant] was shackled during his interrogation; however, this is a standard practice employed by the police due to previous attempted escapes. Since [defendant] was

> in custody for another offense at the time of the interrogation and left alone during breaks in the questioning, the securing of [defendant] by the police reflected prudent police conduct rather than coercive conduct. . . . In addition, we note that [defendant] was fully informed of his **Miranda** rights and made a knowing and voluntary waiver of those rights. Furthermore, [defendant] asserts no specific misconduct in the form of physical or psychological intimidation by the police.

*Id.*

In the instant case, appellant was transported from the Allegheny County Jail to the City of Pittsburgh homicide office to answer questions regarding the victim's death. (Notes of testimony, 5/9/13 at 20.) From the time he was released from the Allegheny County Jail to the time he returned, appellant was only subject to police custody for five hours and twelve minutes. (*Id.* at 23, 38.) The record is also completely devoid of any allegations of police misconduct or any incidents of physical or psychological coercion by the police. Appellant, while not completely free to leave due to his incarceration for an unrelated offense, was free to refuse to answer the detectives' questions and was free to end the interview at any time, and was made aware of his ability to do so by detectives. (*Id.* at 20-21.) At no point during the interrogation did appellant indicate that he wished to return to the Allegheny County Jail.[3] (*Id.* at 59.)

---

[3] While appellant testified that he expressed a desire to be taken back to the jail seven times, the suppression court is the sole arbiter of the facts, and absent a misapplication of law, we are bound to the suppression court's factual findings. (*Id.* at 48, 59; *see James*, *supra*.)

Finally, much like the defendant in **Watkins**, appellant knowingly and intelligently waived his **Miranda** rights. (**Id.** at 10-13.) Specifically, the police had appellant initial a prepared form several times indicating that he understood that (1) he had the right to refuse to answer any police questions; (2) that he had the right to have an attorney present during questioning; and (3) that he could end the interrogation at any time after it started by refusing to answer any more questions. (**Id.** at 11-12.) After individually acknowledging each of these rights, appellant indicated that he was willing to waive his rights by signing the prepared **Miranda** form. (**Id.** at 13.) The detectives discussed appellant's rights with him before they began their interrogation. (**Id.** at 40.)

Therefore, we find that appellant voluntarily waived his **Miranda** rights when he gave his statement to the police, and that his first issue is without merit.

Appellant's second issue is whether the trial court erred in refusing to grant appellant a continuance. Appellant made two requests for a continuance. The first came at the suppression hearing held on May 9, 2013, when appellant requested a continuance after it became apparent to him that the Commonwealth would not be offering him a plea deal. (**Id.** at 2-3.) The suppression judge denied appellant's request after defense counsel indicated in open court that she was ready to proceed. (**Id.** at 3.) The second request for a continuance came on the first day of trial just

before the jury was empaneled and sworn. (Notes of testimony, 5/13/13 at 25.) This request was made due to defense counsel having received new discovery material from the Commonwealth and having learned new information from appellant two days prior to the start of trial. (***Id.*** at 5, 7, 9, 11.) The trial judge denied appellant's second request for a continuance, but did allow defense counsel to take whatever time was required to interview potential new witnesses that were identified in the Commonwealth's discovery information.[4] (***Id.*** at 25-26.)

The standard of review that we must follow for a trial court's decision to grant or deny continuances is well settled.

> The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. ***Commonwealth v. Boxley***, 948 A.2d 742, 746 (Pa. 2008). An abuse of discretion is not merely an error of judgment; rather discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence on the record. Moreover, a bald allegation of an insufficient amount of time to prepare will not provide a basis for reversal of the denial of a continuance motion. ***Commonwealth v. Ross***, 57 A.3d 85, 91 (Pa.Super. 2012). An

---

[4] The new discovery information defense counsel had been made aware of two days prior to the start of trial was as follows: copies of inventory reports from the crime lab and the identity of three potential witnesses: Denise Hayden, Edwin Williams, and Charles Washington. (Notes of testimony, 5/13/13 at 14, 18, 21.) Hayden did not have any information regarding the victim's murder, and Williams and Washington helped move the victim closer to the street. (***Id.*** at 21.) There is no indication that any of these witnesses, who were not called at trial, would have affected appellant's case.

> appellant must be able to show specifically in what manner he was unable to prepare for his defense or how he would have prepared differently had he been given more time. We will not reverse a denial of a motion for continuance in the absence of prejudice. ***Id.***

***Commonwealth v. Antidormi***, 84 A.3d 736, 745-746 (Pa.Super. 2014) (citations omitted). We shall address both of appellant's motions for continuance separately according to the standards set by this court in ***Antidormi***.

We first address the continuance motion that was made just prior to the start of the suppression hearing on May 9, 2013. A written motion for continuance does not appear in the record; however, defense counsel did orally request a continuance prior to the suppression hearing. (Notes of testimony, 5/9/13 at 2-3.) Defense counsel indicated that appellant had learned the morning of the suppression hearing that the Commonwealth would not be offering any sort of plea deal in his case, and as a result, appellant asked for "additional time to prepare for his trial." (***Id.*** at 2.) The trial court then asked defense counsel if, in light of various motions filed on appellant's behalf, she was prepared to proceed to trial. (***Id.*** at 3.) After defense counsel answered in the affirmative, the trial court denied appellant's motion. (***Id.***)

This is nothing more than a bald allegation of appellant not having a sufficient amount of time to prepare for trial. At no point during the initial request for a continuance or in his brief to this court does appellant fulfill the

requirements set forth by this court in **Antidormi** by indicating what he would have done differently to prepare for trial in light of learning that the Commonwealth would not be offering a plea deal. Since appellant has failed to articulate with any specificity how he would have prepared differently if his first motion for continuance had been granted, the trial court did not abuse its discretion when it denied appellant's motion.

We now turn to appellant's second motion for continuance which was filed on the first day of trial on May 13, 2013. This motion was made by defense counsel after receiving 50 pages of discovery material from the Commonwealth which contained the names of three witnesses that were previously unknown to the defense, in addition to receiving new information that defense counsel had received from appellant. (Appellant's brief at 24.) Appellant states that this continuance was required because of the recent disclosures from the Commonwealth and appellant to defense counsel, the "previously prepared line of defense was substantially altered, and that defense counsel needed time to prepare an adequate defense." (**Id.** at 25.) Appellant further states that had the continuance motion been granted, defense counsel "would have had adequate time to properly investigate and interview the newly discovered Commonwealth witnesses, as well as had adequate time to prepare a new line of defense." (**Id.**)

Appellant also asserts that defense counsel had inadequate time to properly interview the newly disclosed Commonwealth witnesses. This is

simply not supported by the facts in the record. When discussing appellant's motion for continuance with defense counsel and the Commonwealth, the trial judge told defense counsel that they would "have an opportunity to interview him over lunch, and I will give you whatever time you need. That's the only thing I see in this entire package that would delay the start of this trial." (Notes of testimony, 5/13/13 at 25.) Therefore, appellant's claim that defense counsel did not have the opportunity to interview the Commonwealth's newly disclosed witnesses is without merit, and appellant was not prejudiced by the trial court's denial of his second motion for a continuance.

Aside from interviewing the Commonwealth's newly disclosed witnesses, appellant fails to articulate how he would have prepared for trial differently had the trial court granted his second request for a continuance. A need for "additional time to properly prepare a new line of defense" is little more than a bald allegation of appellant not having adequate time to prepare for trial, which as discussed above is not grounds for a reversal of a denial of a continuance motion. **Antidormi**, 84 A.3d at 745. Therefore, appellant's arguments relating to his second motion for continuance are without merit, and we find that the trial court did not abuse its discretion when it denied appellant's motion.

Appellant's third issue for our review is whether the trial court erred in admitting a photograph into evidence that appellant claims was highly

prejudicial and lacking in any probative value. The photograph at issue depicts the victim and the crime scene when the police initially arrived. (Notes of testimony, 5/13/13 at 81-82.)

The standard by which photographs depicting crime scenes are admitted into evidence is well settled.

> The admissibility of photographic evidence depicting a crime scene is within the sound discretion of the trial court, and the trial court's ruling will be reversed only upon an abuse of that discretion. ***Commonwealth v. Baez***, 720 A.2d 711, 726 (Pa. 1998). In determining whether to admit a photograph or videotape of a murder victim, a trial court must engage in a two-step analysis. ***Commonwealth v. Pruitt***, 951 A.2d 307, 319 (Pa. 2008). First, the court must determine whether the photograph is inflammatory. If it is not, the photograph may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the court must determine whether the essential evidentiary value of the photograph will improperly inflame the minds and passions of the jury. ***Id.***

***Commonwealth v. Patterson***, 91 A.3d 55, 67 (Pa.Super. 2014).

In the instant case, the Commonwealth attempted to admit a newspaper photograph into evidence depicting the victim and "panicked and screaming civilians." (Notes of testimony, 5/13/13 at 83.) When the Commonwealth attempted to admit the photograph through Officer Norine Kelly, defense counsel objected, stating that the prejudicial value of the photograph outweighed its probative value. (***Id.*** at 82.) The trial judge sustained the objection, instructing the Commonwealth that the photograph

would be admitted if the "panicked and screaming civilians" were removed from the photograph. (***Id.*** at 83.) An edited version of the photograph was later admitted into evidence. (***Id.*** at 122.) Later in the trial, the Commonwealth called Theresa Thornhill, the victim's sister, to testify. (Notes of testimony, 5/15/13 at 439.) At that point, the Commonwealth sought to admit an unedited version of the photograph into evidence because the photograph depicted Thornhill's emotional state. (***Id.*** at 436.) Defense counsel again objected, and the trial court overruled their objections. (***Id.***)

During the two times that the Commonwealth attempted to introduce the photograph into evidence for admission, the trial court conducted a balancing test to determine whether the probative value of the photograph outweighed its prejudicial value. When the Commonwealth first attempted to introduce the photograph, the trial court sustained defense counsel's objections, stating that the presence of screaming civilians would cause prejudice to appellant. (Notes of testimony, 5/13/13 at 83.) When the Commonwealth called Thornhill to testify, and again sought to introduce the unedited photograph, the trial court found that since Thornhill was depicted in the photograph, the photograph's probative value outweighed its prejudicial value:

> Now that she's [Thornhill] testifying, she can identify herself in the photograph and the circumstances. Certainly goes to the jury should know what her state of mind was. Not necessarily her state of mind

> but what her demeanor was and what was going on at that juncture when she undertook to help assist her brother and also her subsequent interpretation of his gesture.[5]   That will be admissible at this juncture.

Notes of testimony, 5/15/13 at 436-437.  In addition to conducting two separate balancing tests in regards to the photograph, the trial court also offered a cautionary instruction to the jury regarding the scene depicted in the photograph:

> Ladies and gentlemen, the photograph, of course, was not gruesome or inflammatory to any degree but it depicts an emotional situation as you saw.  It is admitted solely for the purposes of identifying persons present and their behavior and reaction at the times may reflect on their memories and impressions now that they were given to you in court.

*Id.* at 449.[6]

Based on the record before us, we find that the trial court did not abuse its discretion when it admitted the unedited photograph into evidence. On both occasions that the Commonwealth attempted to have the photograph admitted, the trial court conducted a balancing test to determine whether the photograph's probative value was outweighed by its prejudicial effect.   The record does not indicate that the conclusion the trial court

---

[5] Thornhill testified that the victim was gesturing toward a group of men, indicating that one of them had shot him.  (Notes of testimony, 5/15/13 at 442.)

[6] The trial court also provided further cautionary instructions to the jury before deliberations.  (**See** notes of testimony, 5/16/13 at 622.)

reached is the result of a misapplication of law, nor does it indicate that the trial court's decision was the result of bias, prejudice, or ill-will. Therefore, appellant's argument that the photograph is highly prejudicial and lacks any probative value is without merit.

Appellant's fourth issue is whether the trial court imposed an excessive sentence by ordering two sentences to be served consecutively to a sentence of life imprisonment without the possibility of parole.

> A challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right. **Commonwealth v. Hunter**, 768 A.2d 1136 (Pa.Super. 2001)[,] **appeal denied**, 796 A.2d 979 (Pa. 2001). When challenging the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. **Commonwealth v. Mouzon**, 812 A.2d 617 (Pa. 2002); **Commonwealth v. Tuladziecki**, 522 A.2d 17 (Pa. 1987); 42 Pa. C.S.A. § 9781(b); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal 'furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases.'" **Commonwealth v. Williams**, 562 A.2d 1385, 1387 (Pa.Super. 1987) (**en banc**) (emphasis in original).

**Commonwealth v. McNear**, 852 A.2d 401, 407-408 (Pa.Super. 2004).

An appellant's Rule 2119(f) statement is required to include an articulation of "what particular provision of [the Sentencing] Code is violated, what fundamental norms the sentence violates, and the manner in

which it violates the norm." ***Commonwealth v. Zirkle***, 107 A.3d 127, 132 (Pa.Super. 2014) (citations omitted).

Appellant's Rule 2119(f) statement is as follows:

> Pursuant to Rule 2119(f), the reasons relied on for allowance of appeal with respect to the discretionary aspects of the sentence are as follows: 1) appellant was convicted of one (1) count of Murder in the First Degree, which carried a mandatory sentence of life without the possibility of parole; 2) the Honorable Edward J. Borkowski then sentenced Appellant to two (2) consecutive periods of incarceration of six (6) to twelve (12) months for one (1) count of Robbery and one (1) count of Conspiracy to Commit Robbery, despite the fact that Appellant already received a sentence of life without the possibility of parole; 3) by running appellant's sentences for robbery and conspiracy consecutive, the Honorable Edward J. Borkowski abused his discretion as the additional sentences were wholly unnecessary.

Appellant's brief at 29-30.

The Commonwealth claimed that appellant failed to include a Rule 2119(f) statement in his brief:

> The appellant in the instant case, although mentioning Rule 2119(f) in the body of his argument, has failed to include a separate statement in his brief.

Commonwealth's brief at 40-41. This court has consistently held that a failure by an appellant to articulate a sufficient Rule 2119(f) statement along with an objection from the Commonwealth will result in this court being precluded from considering the issue. ***Commonwealth v. Karns***, 50 A.3d 158, 166 (Pa.Super. 2012), ***appeal denied***, 65 A.3d 413 (Pa. 2013). ***See***

*also Commonwealth v. Dodge*, 77 A.3d 1263, 1271 (Pa.Super. 2013),

*appeal denied*, 91 A.3d 161 (Pa. 2014) ("We disapprove of Appellant's

failure to indicate where his sentences fell in the sentencing guidelines and

what provision of the sentencing code was violated);[7] *Commonwealth v.*

*Goggins*, 748 A.2d 721, 727 (Pa.Super. 2000) (requiring a Rule 2119(f)

statement to include allegations of violations of the sentencing guidelines or

the sentencing code).

Appellant, while referencing a violation of fundamental norms in his

Rule 2119(f) statement by citing the consecutive sentences imposed in

addition to his life sentence, fails to cite any violations of the sentencing

guidelines or the sentencing code. Moreover, appellant's Rule 2119(f)

statement is in the body of the argument section of his brief instead of being

set forth separately pursuant to the Rules of Appellate Procedure.

Therefore, the issue is waived.

Even if appellant were to submit a sufficient Rule 2119(f) statement,

appellant has failed to raise a substantial question into the discretionary

aspects of his sentence. A substantial question is raised when an appellant

"advances a colorable argument that the sentencing judge's actions were

either: (1) inconsistent with a specific provision of the Sentencing Code; or

(2) contrary to the fundamental norms which underlie the sentencing

---

[7] The **Dodge** court ultimately considered the appellant's case on its merits because the Commonwealth failed to object to the appellant's lack of a Rule 2119(f) statement. **Id.**

process." ***Commonwealth v. Prisk***, 13 A.3d 526, 533 (Pa.Super. 2011) (citation omitted). We have previously stated that consecutive sentences that do not impose a manifestly excessive sentence do not constitute a substantial question. ***Dodge***, 77 A.3d at 1269.

In the instant case, as a result of being convicted of first-degree murder, appellant was sentenced to the mandatory minimum sentence of life imprisonment without the possibility of parole. (Notes of testimony, 8/5/13 at 10.) Given the very nature of appellant's sentence for first-degree murder, it is impossible for the sentencing court to impose a sentence for robbery and conspiracy to commit robbery, regardless of whether the sentence was consecutive or concurrent to the murder sentence, that would impose a manifestly excessive sentence. Therefore, even if appellant included a sufficient Rule 2119(f) statement, his underlying argument lacks merit.

The fifth and final issue appellant raises for our review is whether the trial court erred when it denied appellant's post-sentence motions without a hearing. The Pennsylvania Rules of Criminal Procedure provide, in relevant part, that upon a filing of post-sentence motions, "the judge shall also determine whether a hearing or argument on the motion is required, and if so, shall schedule a date or dates certain for one or both." Pa.R.Crim.P. 720(B)(2)(b). A judge is not required to hold a hearing or oral argument when considering a post-sentence motion. ***Id.***, Comment. This

court has also stated that a defendant's due process rights are not violated when the trial court does not hold a hearing to consider a defendant's post-sentence motions, and that the trial judge has discretion over whether or not to hold a hearing. ***Commonwealth v. Gaffney***, 702 A.2d 565, 566 (Pa.Super. 1997), ***affirmed***, 733 A.2d 616 (Pa. 1999).[8]

Appellant has made no argument that the trial court was in violation of the relevant Rules of Criminal Procedure. A plain reading of Rule 720(B)(2)(b) indicates that the trial judge is well within his discretion to determine that a post-sentence motion hearing is not required. Therefore, we find that the trial judge did not abuse his discretion and this claim is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/13/2015

---

[8] The ***Gaffney*** court considered the provisions of Pa.R.Crim.P. 1410(B)(2)(b). ***Gaffney***, 702 A.2d at 566. Pa.R.Crim.P. 1410(B)(2)(b) is identical to Rule 720(B)(2)(b).